PAJALICH v. FORD MOTOR CO.

1. APPEAL AND ERROR—SPECIAL VERDICT.
   Findings of jury on issues of fact submitted to it for special verdict are final.

2. TRIAL—ISSUES OF FACT NOT SUBMITTED TO JURY.
   Questions of fact not submitted to jury for special verdict remain for determination of the court under Court Rule No. 37 (1931).

3. SAME—COURTS—CONTRACTS.

Court must determine from facts found by jury under special verdict and facts determined by court itself whether or not an enforceable contract as to royalties for inventions was established and, if so, its scope.

4. SAME—DETERMINATION OF ISSUES OF FACT—APPEAL AND ERROR.

Under Court Rule No. 37 (1931), all essential issues of fact should be submitted to jury, it being intended that reserved issues should primarily cover minor issues not appreciated at time of trial although the rule affords opportunity to have issues determined by the court or jury as may be agreed upon and on appeal Supreme Court must accept situation as presented to it.

5. CONTRACTS—CONVERSATIONS—SUBSEQUENT EVENTS.

Conversations relied on to establish contracts must be considered in the light of surrounding circumstances including subsequent conduct.

6. MASTER AND SERVANT—CONTRACTS—INVENTIONS—ROYALTIES.

Finding of court that neither mechanic in experimental department nor tractor manufacturer did intend conversations to create express contract for royalties for inventions and improvements *held,* supported by contemporaneous and subsequent circumstances.

Appeal from Wayne; Ferguson (Homer), J. Submitted April 19, 1934. (Docket No. 13, Calendar No. 37,536.) Decided June 4, 1934.

Assumpsit by Antonio Felix Pajalich against Ford Motor Company, a Delaware corporation, for royalties due under an alleged contract. Judgment for defendant. Plaintiff appeals. Affirmed.

*Davidow & Davidow,* for plaintiff.

*Bodman, Longley, Bogle, Middleton & Farley,* for defendant.

FEAD, J. From 1916 to October 29, 1919, plaintiff was employed by Henry Ford & Son, a Michigan corporation, tractor manufacturer, as a mechanic in the experimental department. From 1915 to 1917 the company was wholly engaged in development work. Its first tractors made for use were produced in 1917, on a large order from the British government.

Plaintiff claims he was hired at $6.50 per day for six months and was promised $15 per day thereafter if his ability warranted. He was paid $4.25 per day for six months, had some increases, and received $200 per month in 1919. He said he continued to work and draw his pay on assurances that he would be adequately compensated.

His present claim is that, while working at the plant, with his employer's tools and materials, but in some instances from designs which he worked out at home, he made improvements on four devices for which he is entitled to royalties by virtue of express contract. The oil pipe then being used was in three pieces and plaintiff bent a single pipe to the required shape. The fan was made of four separate blades riveted to a hub and plaintiff made a fan with cross-blades in one piece. A coil box had separate brackets which were bolted both to the box and the motor and plaintiff made the box with brackets an integral part of it. The gas tank leaked and plaintiff made a new one by putting the seam on top instead of on the side, rounding the corners and adding beads for strength. He claims royalties of 2½ cents each for oil pipes, 25 cents each for fans, 7½ cents each for coil boxes, and 12½ cents each for gas tanks on all tractors and 12½ cents each for fans on all automobiles manufactured by Henry

Ford & Son and its successor, defendant herein, from 1917 to 1926, inclusive, almost $2,000,000.

The circumstances surrounding the improvement of the various devices were substantially identical. Plaintiff testified that chief engineer Farkas told him what was wanted, expressed doubt as to his ability to do it, plaintiff said he could do it but wanted royalty for it, and in each instance Farkas promised him royalties and Henry Ford ratified the promise. He designed and fashioned the devices in from two to four days each, besides doing other work.

The case was submitted to the jury for special verdict under Court Rule No. 37, § 7 (1931), by 10 questions covering the claimed contract conversations as to each device. The first two questions and answers are illustrative of the form and substance of all, although there was some difference in language in each instance:

*"Question No. 1:* Did the following conversation take place between the plaintiff and the witness, Eugene Farkas:

"He asked me to make him one, and I said, 'O. K.,' and I said I wanted a royalty of five cents, so that he said he would see the office. And he went in the office and he came back and he said they going to pay me two and one-half cents.

*"Answer:* Yes.

*"Question No. 2:* Did the following conversation take place between Mr. Henry Ford and Mr. Pajalich, the plaintiff, in this case:

"I told Mr. Henry Ford that Mr. Farkas agreed, the chief engineer, to pay me two and one-half cents or two and one-fourth cents, for each oil pipe; and he say, 'That is O. K. whatever the boys arrange with you, go ahead.'

*"Answer:* Yes."

The finding of the jury is final upon the facts submitted to it. But there were other issues of fact in the case and, under Court Rule No. 37 (1931), they remained for the determination of the court. *Sullivan* v. *Bennett*, 261 Mich. 232 (87 A. L. R. 791). Moreover, the finding of the jury was as to facts only and it remained for the court, accepting the facts so found by the jury, together with other facts found by itself, to determine whether an enforceable contract had been established and, if so, its scope. The court held that the contract counted upon had not been established, found other facts which it also held prevented recovery, and entered judgment for defendant.

Under Court Rule No. 37 (1931), we think that all essential issues of fact should be submitted to the jury. Reservation to the court of issues not so submitted is intended primarily to cover minor issues usually not fully appreciated at the time of trial. However, the rule also affords the opportunity to have the issues determined by court or jury, as may be agreed upon. In the instant case counsel for plaintiff complains of the practice. The record shows that he agreed to the questions as submitted and did not ask for the submission of others. We must accept the situation as we find it and pass upon the case as it is presented to us.

Plaintiff claims the answers established a contract by Henry Ford & Son to pay plaintiff the stated sum on every device improved by him and used by it, and its successor, as long as it used the device. The present defendant is charged on the ground that it succeeded Henry Ford & Son and assumed its contracts and obligations.

Oral conversations relied on to establish contracts must be considered in the light of surrounding cir-

cumstances. And frequently subsequent conduct of the parties is important or determinative of whether a contract was made or its construction.

With the possible exception of the fan, it is evident the improvements made by plaintiff were not true inventions nor did they require more than very ordinary mechanical skill to make. They were such as might be expected of a mechanic in experimental work and were made in the course of the general employment of plaintiff, *i. e.*, at the employer's plant and at its expense in time and materials. This would not prevent an express contract for royalties but it casts doubt upon the reasonableness of the claim that the parties intended to enter into a binding engagement which would charge the future production of the plant for an indefinite time.

Each of the parties ought to know best what he intended by the words he used and understood from the words used by the other parties. His understanding, reflected in contemporaneous and subsequent conduct, is more persuasive than claims made in litigation. Defendant has never recognized the existence of a contract with plaintiff for royalties. Plaintiff evidently deemed his services to his employer worth more than his pay but the record is persuasive that his present claim first arose after his other demands for extra compensation had been barred by the statute of limitations. This action was commenced July 13, 1928.

Plaintiff said that before he quit his job he made demands, a hundred times or more and over a period of one or two years, on various officers of Henry Ford & Son for compensation for his services and devices and was met with evasive promises. In testifying to the demands he sometimes used the word "royalties." About a month after he left his em-

ployment he placed his claim in the hands of attorneys who made demand for compensation for his services. At various times, until suit was commenced, he retained other attorneys to press the claim. The record fails to show that at any time, except his statement in relating his oral demands while still employed, did he claim the right to royalties. The omission of such claim is particularly significant because plaintiff knew Henry Ford & Son was using his device in large numbers. In fact, royalties to the time he left his employment would have amounted to nearly $200,000.

Plaintiff claimed that, sometime in 1921, Farkas told him the company had discontinued the use of his devices. At that time the royalties would have amounted to over $350,000. January 14, 1921, plaintiff unequivocally established his understanding of his right to compensation in a letter addressed to defendant's attorney. Referring to a conversation a day before, he asked that he be paid for services in accordance with the statement inclosed. The statement inclosed made demand for compensation for six months at $6.50 per day, 24 months at $15 per day, six months at $1,000 per month for building models of the Eagle, and $2,000 each for the fans, gas tanks, coil boxes and oil pipes. His letter contained no suggestion of an agreement for or right to royalties.

Later in the year his understanding was again made plain. He said he discovered that in 1918 Henry Ford had taken out a patent in his own name for the fan plaintiff had invented. On August 13, 1921, plaintiff's attorney made a demand on Henry Ford for "substantial remuneration therefor over and above his current wages," referred to the patent on the fan, and complained that plaintiff had

been induced and cajoled by promises of remuneration for his inventions and into turning them over to Mr. Ford and not taking appropriate action to obtain patents for himself. Royalties were neither claimed nor mentioned.

The only reasonable conclusion from the circumstances sustains the finding of the court that the parties did not intend their conversations to create the contract counted on. If, as is doubtful, they intended their talk to have any contractual force, it must have been in connection with plaintiff's claim to right of extra compensation as a skilled mechanic and may have been considered a sort of measure of the amount of compensation during his employment. His insistence upon extra compensation while he was employed and his fixing the stated sum on his improvements about the time he understood their use had been discontinued indicate his understanding that fair compensation, not continuous royalty, was the limit of liability to him under any arrangement he had.

Defendant raises other questions including estoppel but they need not be discussed.

Judgment affirmed.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.