ANDERSON *v.* JERSEY CREAMERY CO.

1. MASTER AND SERVANT—DEATH—SURVIVAL ACT—SPECIAL FINDINGS—EVIDENCE—ELECTRICITY—NEGLIGENCE.

In action under survival act against employer for fatal injuries received by plaintiff's decedent when he came in contact with charged electrical conduit, evidence *held,* to support jury's findings on special questions that death was not instantaneous, damages were $10,000, that repairs made to conduit the day before were insufficient, that defendant had knowledge of the improper insulation and that manner in which the accident occurred should have been anticipated by a reasonably prudent man (3 Comp. Laws 1929, § 14040 *et seq.*).

2. DEATH—SURVIVAL ACT—DISTINGUISHING TEST.

The test for distinguishing whether or not a cause of action lies under the survival act or death act is whether the active cause of death continued to operate directly upon the injured person until life was extinct (3 Comp. Laws 1929, § 14040 *et seq.*; §§ 14061, 14062).

3. ELECTRICITY—DEATH.

Death from electric shock is not necessarily instantaneous.

4. TRIAL — MOTIONS FOR JUDGMENT NON OBSTANTE VEREDICTO — RECORD.

Decisions of court on motion for judgment *non obstante veredicto* should be based upon the record and the law as expressed in the statutes and authorities and not upon the contents of scientific books not submitted to the jury, as there has been no means afforded of examining the author as to his learning, honesty and sources of special knowledge.

5. DEATH—SURVIVAL ACT—ELECTRICITY—QUESTION FOR JURY.

In action under survival act for fatal injuries from electric shock, question of whether or not decedent survived or died instantaneously *held*, for jury notwithstanding consciousness was never regained (3 Comp. Laws 1929, § 14040 *et seq.*).

6. VERDICTS AND FINDINGS—SPECIAL FINDINGS.

Special findings of a jury are final upon the facts submitted to it (Court Rule No. 37, § 7 [1933]).

7. PLEADING—DEATH ACT—SURVIVAL ACT—ELECTION OF REMEDIES.

Remedies under death act and survival act may be joined in one action under separate counts and no election of remedies can be required (3 Comp. Laws 1929, § 14040 *et seq.*; §§ 14061, 14062).

8. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RECORD.

Matters pertaining to action begun subsequently to case at bar have no place in record of latter case and Supreme Court does not consider matters *dehors* the record.

9. SAME—ABANDONMENT OF APPEAL—RECORD.

Record on appeal in action brought under survival act, which contained paper marked as an exhibit, alleged to be declaration subsequently filed in another cause between the same parties brought under the death act, *held*, insufficient to permit determination of question of abandonment of pending appeal, where such exhibit was not properly in the record (Court Rule No. 18 [1933]).

10. MASTER AND SERVANT—DEATH—SURVIVAL ACT—KNOWLEDGE OF DEFECTIVE ELECTRICAL CONDUIT—NEGLIGENCE.

In action under survival act for fatal injuries to defendant's employee from electric shock when he came into contact with charged electrical conduit, questions as to whether defendant knew of defective condition of conduit and its negligence in having it repaired *held*, for jury under evidence.

11. SAME—APPEAL AND ERROR.

    Decedent in action under survival act *held*, an employee of defendant where such matter was proved by plaintiff administrator and not denied by defendant although such matter was not submitted to jury.

12. APPEAL AND ERROR—DAMAGES.

    Amount of damages fixed by jury in answer to special question and not appealed from cannot be disturbed on appeal.

Appeal from Wayne; Ferguson (Homer), J. Submitted November 5, 1936. (Docket No. 92, Calendar No. 39,186.) Decided December 28, 1936. Rehearing denied March 2, 1937.

Case by Alfred N. Anderson, administrator of the estate of Alfred Anderson, Jr., deceased, against Jersey Creamery Company, a Michigan corporation, for fatal injuries sustained by plaintiff's decedent when he came in contact with a charged electrical conduit. Verdict on special questions for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed.

  *Guy W. Moore* and *Hal P. Wilson,* for plaintiff.

  *Kenneth M. Stevens,* for defendant.

BUSHNELL, J. Plaintiff's decedent, while engaged in loading one of the defendant's milk trucks, was electrocuted by coming in contact with a charged electrical conduit. He never regained consciousness. His father, who was also employed by defendant, reached his son's side while first aid was being administered. The father testified that he saw his son's face twitch and his fingers move while resuscitation was being attempted with a pulmotor. The record does not contain the pleadings, but we are informed by the briefs that this action was in-

stituted only under the survival act, 3 Comp: Laws 1929, § 14040 *et seq.*

In answer to special questions submitted to them by the court, the jury found that death was not instantaneous and awarded damages against defendant in the sum of $10,000. The jury also determined that when defendant's repair man had finished working on the conduit the day before the accident, the pipe was still charged with electricity; that defendant had knowledge of the improper insulation of the wires contained in the conduit and that the manner in which the accident occurred should have been anticipated by a reasonably prudent man. There is testimony in the record to support these findings.

The accident occurred on November 13, 1933; the answers of the jury were filed March 1, 1935, and defendant filed a written motion on March 9, 1935, to set aside the verdict. The trial judge took the motion under advisement and filed his written opinion January 2, 1936, almost ten months later. According to defendant's motion, which is not correctly printed in the record, plaintiff began an action on November 8, 1935, against defendant under the death act, 3 Comp. Laws 1929, §§ 14061, 14062. This apparent anachronism in the motion is explained by various amendments which are incorporated therein without reference to subsequent pleadings shown in the calendar entries.

The trial judge's opinion states in part:

"The court finds nothing in any decision of the State of Michigan that there is sufficient evidence to go to the jury that the deceased survived the injury; and this court is constrained, after a careful examination of all of the law that has been presented to it, and an independent research, to come to the

conclusion that the action did not survive. The answer to question No. 3 should be 'no.' ''

''The declaration is founded solely upon the survival act. The plaintiff is not entitled to recover. His action lies under the death act. The court cannot concern itself with the measure of damages unless there is a cause of action in existence.''

A motion to amend the declaration to include a count under the death act was discussed but not made.

Plaintiff appeals from a judgment for defendant notwithstanding the verdict. Defendant filed a cross-appeal claiming error, because the court said in its opinion:

''That there is no merit to any of the assignments of the defendant except the one concerning whether or not there was a survival of the plaintiff's decedent, and action may not be brought under the survival act.''

Defendant says:

''That unless this honorable court grants the relief requested the cross-appellee may successfully contend in the second action he had started and which is now awaiting trial under the 'death act' that the questions herein submitted have become *res judicata* and thereby bar the cross-appellant from asserting all of his defenses in the second suit. The plaintiff's election to try two cases for the same cause of action in the lower court, plus his appeal from a directed verdict for the defendant in the first case, has forced this cross-appeal upon the defendant.''

Defendant's motion *non obstante veredicto* was granted on the single ground that plaintiff's decedent's death was instantaneous.

Six briefs were filed by the respective parties with consequent ramifications of the issues and questions involved. The first was filed by defendant in which it argues lack of actionable negligence on its part and a denial that decedent was its employee. Without replying to these questions, plaintiff's first brief makes this statement:

"The appellant says there is but one question involved in this appeal which is covered by appellant's reason for appeal No. 1 (*i. e.* that the trial court erred in holding that the question of survival of the plaintiff's decedent was not conclusively established by the testimony). The trial court's contrary holding, he admits, is based on so-called facts which he claims to have found by an independent research, out of court, off the record, without notice, and after the contrary verdict of the jury."

Defendant describes itself as appellee in its second brief and states additional questions, namely:

"Has the plaintiff abandoned this appeal by electing to and filing a new case seeking an inconsistent remedy?

"Did plaintiff have a right of action under survival act?

"Was the verdict of the jury contrary to the overwhelming weight of the testimony?"

Plaintiff filed a second brief describing himself as "cross-appellee" in which he recites as a "counter statement of questions involved" the same ones that were proposed in defendant's first brief.

Was there sufficient evidence to take the question of decedent's survival to the jury?

Notwithstanding our holding that: "The recognized test in this State distinguishing between the two causes of action, survival and instantaneous death, is whether the active cause of death con-

tinued to operate directly upon the injured person until life was extinct. *Ely* v. *Railway,* 162 Mich. 287. Concededly death from an electric shock is not necessarily instantaneous. Persons may and do suffer injuries from that source in all degrees from a temporary nervous disturbance or slight burn to permanent injury or sudden death, contingent on many conditions and particularly on the voltage or electromotive force of the current received, as reckoned in volts. In this case those service wires are stated to have carried 110 volts," *Swaczyk* v. *Detroit Edison Co.,* 207 Mich. 494, 501, the trial judge concluded from his examination of the law and *"an independent research"* upon the general subject of electrocution, that death was instantaneous. The opinion is replete with references to, and quotations from, Herzog's Medical Jurisprudence and Peterson, Haines & Webster's Legal Medicine and Toxicology (2d Ed.). Decisions of courts should be based upon the record and the law as expressed in the statutes and the authorities and not upon the contents of scientific books. We held in *Foley* v. *Railway Co.,* 157 Mich. 67, that it was error to permit counsel to read to a witness, as a part of cross-examination, an extract from "International Reference Book of Surgery."

In *People* v. *Millard,* 53 Mich. 63, the reason for this rule is discussed at length. It is shown that the hearsay testimony of written opinions of other persons should not be submitted to a jury which has no means of examining the author as to his learning, honesty and sources of special knowledge. See, also, *City of Detroit* v. *Porath,* 271 Mich. 42; *People* v. *McKernan,* 236 Mich. 226; *DeHaan* v. *Winter,* 258 Mich. 293, and *DeHaan* v. *Winter,* 262 Mich. 192. The reasoning of the foregoing authorities applies

with equal force to consideration by trial courts of motions *non obstante veredicto.*

We quote a portion of the testimony of decedent's father:

"*Q.* And what happened then? Just state what happened in regard to the accident, not the meeting.

"*A.* Well, we sat there, and as we sat there at least, I imagine it was about half an hour, and the meeting was going on, and then somebody came running down the stairs and called Mr. Ward.

"I didn't pay any attention to him at that time. About five minutes after that, he came running down again, told Mr. Ward, he says, 'The Anderson boy,' he says, 'upstairs, is hurt seriously,' he says.

"Right then, of course, he went upstairs and I went right up after him. We all went up.

"*Q.* Where did you go from there?

"*A.* Then at that time we came up, they took me in the front office, and they had my son laying on the floor with a pulmotor, working on him.

"*Q.* Did you at that time note any expression of your son, any movements, indicating pain?

"*A.* Yes.

"*Q.* Just state what you saw.

"*A.* His face was twitching and his fingers were moving, and I asked Mr. Mosher there if he thought he would be all right—.

"*Q.* When you left the room, or as you say, were taken out, when last you saw your son, what movements of his face or any part of his body did you see, if any?

"*A.* His face was twitching while I stood there looking at him; and his fingers were moving."

Frank Bava, who was working with decedent at the time of the accident was called for cross-examination by plaintiff and testified that two days before, he accidentally touched the same pipe and

received a shock; that he reported this to his employer and was told this would be fixed as quickly as possible. He further said that when Anderson was taken into the ice box, he did not speak "nor open his eyes" and that while he could not say for sure that he was dead, he saw saliva in his mouth and that "the last I could see was when I handed him into the trailer, he just quivered a little bit."

Defendant denies there was any indication of life and says that the muscular movements, if any, were either due to the mechanical action of the pulmotor or contraction and relaxation of muscles following instantaneous death.

Although the testimony as to signs of life is conflicting and "the question is an exceedingly close one * * * and * * * even though we might have disagreed with the jury's determination were we a fact-finding body," nevertheless under the authority of *Micks* v. *Norton*, 256 Mich. 308, 311, and *Bos* v. *Gaudio*, 267 Mich. 517 (both so recently decided that we refrain from quotation), and the authorities cited in the latter case at page 520, this testimony was sufficient to take the question of decedent's survival to the jury.

Special findings of a jury are final upon the facts submitted to it. Court Rule No. 37, § 7 (1933); *Pajalich* v. *Ford Motor Co.*, 267 Mich. 418, and *Wuerth* v. *Stivers*, 273 Mich. 276.

The hair-splitting distinctions between actions under the survival act, 3 Comp. Laws 1929, § 14040, and the death act, 3 Comp. Laws 1929, § 14061, have long vexed the profession and the courts. The rule has been approved that the two remedies may be joined in one action under separate counts and no election of remedies can be required. *Carbary* v. *Railway*, 157 Mich. 683, and *Ely* v. *Railway*, *supra*.

The record contains a paper marked as an exhibit and said to be a declaration subsequently filed in another cause between the same parties brought under the death act.   The instant appeal was perfected by both parties in an action brought under the survival act.   Defendant ingeniously proposes that plaintiff's subsequent action is an abandonment of the present appeal.   Matters pertaining to an action begun in November of 1935 cannot find a place in the record of a cause heard during the preceding February and we do not consider matters *dehors* the record.   Orderly procedure suggests that such a question be raised by a motion to dismiss the appeal on which proofs could have been taken, if necessary.   See Court Rule No. 18 (1933).   The record before us does not contain sufficient information to permit determination of the question of abandonment of the pending appeal.

Was there any actionable negligence on the part of defendant? Its employee and witness, Scott, repaired a broken, shorted wire in the conduit the day before the accident.   This conduit contained bell wires and light wires, the latter carrying 110 volts. After the accident, he found "the break in the wire at  the other end of the pipe where it had been pulled out of the junction box at the west end of the pipe * * * a light socket with a cord on it just beyond these wires was indirectly connected with these wires and with the conduit."   Scott said one could get a "sensation" by taking hold of the pipe.

Lorne Hannah also testified for defendant and stated on cross-examination that several weeks prior to the accident, he had received electrical shocks while handling milk cases on the chute leading from the icebox to the trucks and that other men used to play with these electrical shocks.

Walter Fruck, a licensed electrician, testified that he had repaired the same conduit on two occasions before the accident after it had been struck by defendant's truck and that each time he was compelled to make insufficient repairs, because his former employer, the defendant, refused to provide proper materials. A question of fact as to defendant's knowledge and negligence is raised by the testimony of Bava, Scott, Hannah and Fruck.

The court did not submit to the jury the question of decedent's employment. It was, however, proved by the testimony of plaintiff and not denied by defendant.

The amount of the damages is not referred to nor argued in any of defendant's briefs. It was fixed by the jury in answer to one of the court's special questions and not having been appealed from, cannot be disturbed upon review.

The answers of the jury to the special questions were not contrary to the overwhelming weight of the testimony.

In the light of *Bos* v. *Gaudio, supra,* and the other authorities cited, the court erred in entering a judgment notwithstanding the verdict and it is reversed and the cause remanded for entry of judgment in conformity to the answers of the jury to the special questions, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.