McCONVILLE *v.* REMINGTON RAND, INC.

1. Trial—Courts—Contracts.

Court must determine from facts found by jury under special verdict and facts determined by court itself whether or not an enforceable contract as to salesman's commissions was established, and, if so, its scope.

2. Contracts—Conversations—Subsequent Conduct.

Conversations relied on to establish contracts must be considered in the light of surrounding circumstances, including subsequent conduct.

3. Appeal and Error—Special Questions—Verdicts and Findings—Court Rules.

Supreme Court is bound by findings of jury as to essential issues of facts submitted to it in form of special questions and must pass upon the case as thus presented in the absence of appellant's request for submission of other questions (Court Rule No. 37 [1933]).

4. Same—Evidence—Commissions—Stipulations.

In action for claimed commissions alleged to have been earned in selling office equipment for defendant, record *held,* to contain sufficient proof of amount of claim to permit entry of judgment, where parties filed stipulation containing a detailed computation of sales and total commissions claimed by plaintiff.

5. Action—Motive for Suit.

Courts, generally speaking, are not concerned with the motives that animate plaintiffs acting within their legal rights.

6. Witnesses—Credibility—Motive for Suit—Question for Jury.

In action by salesman for commissions for sale of office equipment, attack on credibility of plaintiff's testimony by way of impugning his motive for bringing suit *held,* not to remove question of his credibility from consideration by jury.

7. PRINCIPAL AND AGENT—SALE OF PERSONALTY—INDUCING CAUSE—
   QUESTION FOR JURY.
      In action for commissions for sale of office equipment, question
      of whether or not plaintiff was the inducing cause in procuring
      sale of a large amount of defendant's goods, *held*, question of
      fact for jury.

8. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.
      Verdict of jury is conclusive unless there was error in submitting
      the issue to it.

9. SAME—NEW TRIAL—VERDICTS—GREAT WEIGHT OF EVIDENCE.
      Although Supreme Court is not the trier of the facts, it is its
      duty, under statute as to incorporation of proceedings had on
      motion for new trial in bill of exceptions to examine the testi-
      mony and determine whether the verdict is against the clear
      weight of the evidence (3 Comp. Laws 1929, § 14314).

10. SAME—SPECIAL QUESTIONS—GREAT WEIGHT OF EVIDENCE.
      In salesman's action for commissions for procurement of large
      order for office equipment from defendant, jury's answers to
      special questions in plaintiff's favor *held*, not so contrary to
      great weight of the evidence as to justify setting them aside
      hence entry of judgment in conformity therewith was proper
      (3 Comp. Laws 1929, § 14290).

Appeal from Wayne; Webster (Arthur), J. Sub-
mitted October 7, 1936. (Docket No. 35, Calendar
No. 39,035.) Decided December 28, 1936.

Assumpsit by Gerald McConville against Reming-
ton Rand, Inc., a Delaware corporation, for sales-
man's commissions. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

*Norman J. Miller* and *Albin J. Stevens*, for plain-
tiff.

*Welsh, Bebout & Hill* (*William J. Beer*, of coun-
sel), for defendant.

BUSHNELL, J. Plaintiff's claim for commissions,
said to have been earned by him in selling defend-

ant's Kardex and other equipment to Universal Credit Company, was submitted to a jury on special questions under Court Rule No. 37, § 7 (1933).

Following the denial of the defendant's motions for judgment notwithstanding the verdict and for a new trial, the court entered a judgment for plaintiff in the sum of $24,009.81.

Defendant contends that plaintiff failed to prove that a contract existed between himself and Remington Rand, Inc.; that he did not secure the orders for the purchase of the merchandise in question; that defendant was entitled to a directed verdict; that the court erred in denying such motion as well as in failing to enter a judgment *non obstante veredicto* and that it was entitled to a new trial. It is also argued that both the special verdict and judgment are contrary to the weight of the evidence.

Appellee agrees with appellant's statement of questions involved, except that he denies that in order to entitle him to the claimed commissions, it was incumbent upon him to secure a binding contract from defendant's purchaser. He says there is nothing in the record to indicate that this matter was an issue in the case.

Plaintiff, who worked on commission with a drawing account, had as his sales territory, that portion of the city of Detroit east of Woodward avenue, but because of previous experience with defendant's products, he also assisted other representatives in making sales in their territories.

Mizer, one of defendant's salesmen, while going through the Buhl building in Detroit looking for business in his territory, discovered an office being opened for the use of a new corporation, Universal Credit Company, which company was being organ-

ized to handle deferred payments on Ford cars. He attempted to sell defendant's card accounting system to the new concern and, during the negotiations, asked plaintiff to assist him. Defendant's branch sales manager Joyce, under whom McConville and Mizer were working, agreed that McConville might assist Mizer, but he was careful to conceal from both these employees that defendant company was already negotiating the sale of complete equipment to the possible 35 or 36 new offices of Universal Credit Company throughout the United States. His only explanation of this evasion was that Kanzler, a brother-in-law of the president of the Ford Motor Company, who later became president of the credit company, had sworn him to secrecy regarding the plans for the new company. While McConville was working with Mizer, the question arose between them of a proper division of the anticipated commissions on these sales and after a private conference with Joyce, McConville agreed to pay Mizer $500 for the latter's interest in this account.

Mizer testified that Joyce asked him to give up the account, insisting that a more experienced man should handle the matter. McConville and Joyce both testified and, while their versions of the arrangements regarding this new business are in conflict, they seem to agree that it was understood that the Universal Credit Company orders would be so large that McConville would be required to give up his regular work and devote all his time to the new account.

McConville insists that it was agreed that he was to have "all the commissions on all the merchandise sold to Universal Credit for the offices that they were at that time planning to open, providing that

I could obtain from Universal Credit an agreement to standardize upon Remington Rand products.''

Joyce testified at length, much of the testimony being calculated to show the jury that the business was secured without the sales efforts of either Mc-Conville or Mizer. Joyce said:

''Mr. McConville remained in his territory in the east part of Detroit until the time he was assigned to the Universal Credit account. Mr. McConville remained as a supervisor as I have explained, up until the time he was assigned to the Universal Credit account. Mr. McConville retained the supervisor's position for probably about ten days or two weeks after he was assigned to the Universal Credit account, then we took it away from him. After that he remained and worked on the Universal Credit account as a salesman, until he resigned on or about December 6, 1928, and I accepted his resignation the following morning. * * *

''Mr. McConville was assigned officially to the Universal Credit account after May 1, 1928, when I signed the so-called agreement which has been introduced in evidence as exhibit 5. I am sure it was after that date. Mr. McConville did have something to do with it prior to that date. He was supervisor in that territory over Mr. Mizer, and the account was in Mr. Mizer's territory and he was working on that, and then I stepped in after these fellows found out that this concern was really a going concern there, and told them that this deal had been going on for months, which we brought out here in this testimony. * * * I heard Mr. McConville testify that after he went out and discussed this with Mr. Mizer and they went out and arrived at that agreement, that then he went back into my office and just he and myself were present, and that there at that time was when he was assigned to that account but I do not believe that is correct. I am

not positive. I tried to tie the thing in, and it is pretty hard to go back to 1928 and remember what happened. I did not have the conversation with Mr. McConville as he has described it. I had absolutely no authority to make such an agreement as McConville claims I made with him. I did not have authority to fix the price of these various articles which the Universal Credit Company was contemplating buying. * * *

"At no time did I ever make any special agreement with Mr. McConville that he was to get commissions or compensation on this Universal Credit account."

McConville testified that he did not resign, but was summarily dismissed.

After the court's charge, to which both parties acquiesced, the jury found by its answers to the special questions: That McConville was assigned to the account under a special agreement; that he was to receive commissions on all merchandise purchased, as hereinbefore quoted from his testimony; that the new company had not decided to buy the merchandise before McConville was assigned to the account; that by his efforts he induced Universal Credit Company to standardize its equipment, as stated, and that McConville did not resign.

Little benefit can be derived from a further discussion of the testimony of either the interested or disinterested parties, to be found in some 300 pages of the record. All the issues in the case were covered by the special questions submitted to the jury, and were of fact and not of law. The jury after being properly charged by the court found for the plaintiff.

Appellant argues that *Pajalich* v. *Ford Motor Co.*, 267 Mich. 418, requires us to pass upon the

legal question of whether or not a valid contract was established. We said in that case:

"The finding of the jury was as to facts only and it remained for the court, accepting the facts so found by the jury, together with other facts found by itself, to determine whether an enforceable contract had been established and, if so, its scope."

But certain facts necessary to determination of the issues in the *Pajalich Case* were not included in the special questions and we stated therein:

"Oral conversations relied on to establish contracts must be considered in the light of surrounding circumstances. And frequently subsequent conduct of the parties is important or determinative of whether a contract was made or its construction."

We also quote the concluding paragraph of the cited opinion which emphasizes the distinction between it and the instant case:

"The only reasonable conclusion from the circumstances sustains the finding of the court that the parties did not intend their conversations to create the contract counted on. If, as is doubtful, they intended their talk to have any contractual force, it must have been in connection with plaintiff's claim to right of extra compensation as a skilled mechanic and may have been considered a sort of measure of the amount of compensation during his employment. His insistence upon extra compensation while he was employed and his fixing the stated sum on his improvements about the time he understood their use had been discontinued indicate his understanding that fair compensation, not continuous royalty, was the limit of liability to him under any arrangements he had."

As stated in *Wuerth* v. *Stivers*, 273 Mich. 276:

"We are bound by the jury's findings as to the facts submitted to it under Court Rule No. 37 (1933), and the questions as framed contained all the essential issues of fact. Counsel for appellant did not ask for the submission of other questions, and as stated in *Pajalich* v. *Ford Motor Co.*, 267 Mich. 418: 'We must accept the situation as we find it and pass upon the case as it is presented to us.' "

It is urged that the record fails to contain sufficient proof of the amount of claimed commissions to permit the entry of a judgment. The parties filed a written stipulation containing a detailed computation of sales and "total commissions claimed by McConville." Defendant's counsel stated on the record at the opening of the trial, in a colloquy between court and counsel in the absence of the jury:

"If he is entitled to the commissions which he claims, he would be entitled to $21,792.53 for the whole period."

Appellant asks us to consider the significance of plaintiff's failure to begin this action until some four and one-half years after he had severed his connection with defendant, and then not until after a subsidiary of defendant had obtained a judgment against McConville for a small amount arising out of another transaction. Joyce testified that he accidentally met McConville following the entry of this judgment and plaintiff told him that Simpson (meaning defendant's chief counsel in Buffalo) "has asked for this, now he is going to walk into something," etc.

As a general proposition courts are not concerned with the motives that animate plaintiffs acting with-

in their legal rights. This testimony was offered by defendant and received without objection.

Such attack on the credibility of McConville's testimony does not raise a question of law; this matter was fully and properly determined by the answers of the jury. See 1 C. J. Actions, p. 971, § 66; 1 C. J. S. Actions, p. 1064, § 24; 1 R. C. L. Actions, p. 319, § 6; 1 Am. Jur. Actions, p. 416, § 18, and annotations in 25 A. L. R. 977.

We quote with approval the following from the trial judge's written opinion denying the usual motions:

"Whether plaintiff was the inducing cause or not was a question of fact decided by the jury in plaintiff's favor. In my opinion defendant's motion for judgment *non obstante* must be overruled.

"On the motion for a new trial it is my understanding that the court can only set the jury's verdict aside where it is clearly against the great weight of the evidence. Two men made the contract here in question, with no other persons present. They differ about its terms. This is a question of fact for the triers of the facts. Had I been sitting upon the jury, I am frank to say I should have held that the plaintiff had not sustained his version of the commission contract. Nevertheless I cannot, sitting as a judge, say that the answers of the jury are so clearly against the great weight of the evidence as to warrant the court in setting them aside."

In a comparable case, *Sweeney v. Adam Groth Co.,* 269 Mich. 436, where action was brought for a salesman's commissions, we said:

"The testimony supports the findings. Where there is sufficient testimony to carry the case to the jury, its verdict is conclusive unless there was error

in its submission. *Barnes* v. *First National Bank of St. Ignace,* 256 Mich. 600.''

Appellant does not claim there was any error in the submission of testimony.

Notwithstanding our personal views formed after reading testimony, like a trial judge, we do not disturb the findings of fact of a jury merely because such findings are claimed to be against the great weight of the testimony. *Wright* v. *Dwight,* 209 Mich. 678.

In *Hall* v. *Proctor,* 221 Mich. 400, we said:

''It is insisted that the verdict was against the great weight of the evidence. While we are not 'triers of facts,' it is only our duty under the statute (3 Comp. Laws, 1915, § 12635 [3 Comp. Laws 1929, § 14314]) when such a claim is properly presented, to examine the testimony and determine whether the verdict is 'manifestly against the clear weight of the evidence.' *Foster* v. *Rinz,* 202 Mich. 601.''

That duty has been discharged in the instant case and we are unable to hold that the answers of the jury to the special questions are so contrary to the great weight of the evidence as to justify setting them aside. The trial judge properly entered judgment in conformity to the verdict (3 Comp. Laws 1929, § 14290), and that judgment is affirmed, with costs.

North, C. J., and Fead, Wiest, Butzel, Sharpe and Toy, JJ., concurred. Potter, J., did not sit.