CITY OF GARDEN CITY v. HOLLAND.

1. APPEAL AND ERROR—ACCOUNTING—RECORD.
   Decision of the Supreme Court in a suit for accounting must be confined to the testimony within the record.

2. SAME—CHANCERY CASES—DE NOVO REVIEW.
   The Supreme Court reviews appeals in equity *de novo* on the record.

3. ACCOUNTING—BURDEN OF PROOF—BREACH OF TRUST BY MAYOR—BONDS.
   Plaintiff city failed to sustain its burden of proof in suit for accounting against its former mayor for alleged breach of trust in the handling of certain refunding bonds.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur, Appeal and Error § 2; 3 Am Jur, Appeal and Error §§ 814, 815, 895, 912.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 3, 1951. (Docket No. 14, Calendar No. 44,987.) Decided December 3, 1951.

Bill by City of Garden City against Robert C. Holland and others for accounting and other relief. Decree for plaintiff against defendant Holland. Defendant Holland appeals. Reversed.

*Jesse W. Bollinger* and *John J. Nellis,* for plaintiff.

*James E. Haggerty* (*Harry Cohen* and *Norman J. Cohen,* of counsel), for defendant.

BUSHNELL, J. This is an appeal from a decree in which defendant Robert C. Holland, former mayor of plaintiff city of Garden City, was held guilty of a breach of trust, and adjudging him to be indebted to the city in the sum of $127,000. In 1936, Garden City refunded $529,000 water bonds under an agreement with the State of Michigan. These refunded bonds came into the custody of the State treasurer as a part of the soldiers' bonus sinking fund.

The State treasurer's office accorded municipalities, whose bonds were in the sinking fund, the privilege of buying other acceptable securities on the market and exchanging them for their own municipal securities which were a part of the sinking fund. This practice enabled municipalities to profit by purchasing bonds at less than par and exchanging them at face value.

A witness, who was secretary of the public debt commission, secretary of the loan board, and manager of the municipal bond division of the treasury department during this period, testified regarding this exchange practice. He stated that the privilege was also accorded individuals and private invest-

ment houses. Defendant Holland was mayor of Garden City from November, 1936 to 1944. During this time he had acted for the city in the exchange of bonds on several occasions, each transaction being authorized by the city council and carried out by Holland in his official capacity.

On August 7, 1942, Holland gave a receipt to the State treasurer for $25,000 of Garden City Water District bonds Nos 451 to 475, dated December 1, 1935, due December 1, 1965. This receipt he signed as mayor.

The books of the State treasurer contain an entry indicating sale on this date to Garden City in the amount stated and bearing the notation: "Received in exchange: City of Clawson 1937 Refdg. Series B due 10/1/67 Nos 28–40, 47–57 & 72, * * * $25,000."

On December 14, 1942, Holland, as mayor, signed another receipt for bonds of the par value of $102,000, and the State treasurer's record contains an entry pertaining to this transaction. There is no testimony in the record to indicate that plaintiff city furnished any of the consideration for these particular exchanges, or that the transactions were authorized by the city council. On the contrary, there is testimony to the effect that at the time the city was without financial means to make such an exchange. The Garden City bonds, which were obtained from the State treasurer, were never delivered to the city for cancellation, but interest coupons have been presented for payment from time to time. Since these are bearer bonds, their present whereabouts is unknown, and the identities of their present owners cannot be ascertained.

Holland testified in his own behalf and explained the situation as follows: He stated that he was approached by a man named Sieber, who was doing business as the Homestead Realty Company. Sieber owned 160 acres on the border of the city of Wyan-

dotte, which he had developed into an industrial housing area, and he was interested in conducting a like operation in Garden City. There was some conversation between them concerning the possibility of using city bonds in payment of taxes and for services which the city would render to the housing project. Sieber indicated that if he could acquire some Garden City bonds and use them in this manner he might begin operation. Holland stated that he discussed this matter informally with members of the city council, who expressed a favorable opinion of the transaction. He does not claim, however, that this was followed up by any formal resolution. According to Holland, when he met Sieber at Lansing in August, Sieber had with him bonds at par value of $25,000, which were exchanged with the State treasurer, and after the transaction the Garden City bonds were given to Sieber, although he, Holland, signed the receipt. He claims that he disclosed to the State treasurer that he was acting for an individual and not for the city. Holland also testified that the subsequent transaction of December 14th was essentially similar to the first. He added that some of the bonds which Sieber brought to Lansing the second time were rejected by the State treasurer as not being acceptable. It is Holland's contention that the proposed building project was called off because of Sieber's inability to obtain the necessary land. He denies that he received any benefit from any source for his part in the transaction, or that he furnished any part of the consideration for the exchange.

The trial judge in this action for an accounting and mandatory injunction held that Holland was guilty of a breach of trust; that he and Sieber were joint adventurers; and, that the bonds traded resulted in a profit to Holland and Sieber. He found Holland indebted to the city for "illicit profits ac-

cruing to him while he held the office of mayor, in the amount of $127,000, less whatever costs accrued in the acquisition of the bonds traded in." He further stated that:

"The decree may provide that the defendant shall be given an opportunity to show the cost to him and to Sieber of the transaction, and such opportunity may be extended for a period of 60 days after the date of the entry of the decree in accordance with this opinion. For the purpose of making such accounting, the proofs in the case will be held open until the expiration of said 60-day period."

Defendant Holland seeks reversal and vacation of the decree for the reasons that no proof was offered that he personally profited by the transaction, and that the court was in error in holding him guilty of a breach of fiduciary duty, in the light of the informal discussion with the members of the city council. He emphasizes the fact that the trial judge entertained serious doubts as to whether plaintiff city had established its claim that Holland had received any pecuniary advantage, pointing out that the trial judge stated in his opinion:

"The testimony is not very satisfactory. * * * Of course, there are gaps in the testimony in this case. There usually are when most of the facts are in the possession of the defendant and can be brought into the open only at the hardest."

Holland also urges that where the direct proof is lacking, the doubt should be resolved in favor of the defendant when his explanation of the transactions is equally consistent with innocence.

Our decision must be confined to the testimony within the record. *Anderson* v. *Jersey Creamery Co.,* 278 Mich 396; *O'Connor* v. *O'Connor,* 281 Mich 640; *Detroit Trust Co.* v. *Mason,* 309 Mich 281.

In appeals in equity we review the record *de novo.* *Barrett* v. *Swisher,* 324 Mich 638; *Fisk* v. *Fisk,* 328 Mich 570; *Kahn* v. *Friedman,* 329 Mich 164.

Our examination requires the conclusion that plaintiff city has not sustained the burden of proof. Because of its failure in this respect the decree of the trial court must be vacated. *Lendberg* v. *Brotherton Iron Mining Co.,* 75 Mich 84; *Caruso* v. *Weber,* 257 Mich 333; *Refrigerating Equipment Co.* v. *Finch,* 257 Mich 623.

The decree is vacated, with costs to appellant.

REID, C. J., and BOYLES, NORTH, DETHMERS, and CARR, JJ., concurred with BUSHNELL, J. SHARPE, J., concurred in the result. BUTZEL, J., did not sit.