WOLF *v.* PROVIDENCE WASHINGTON INSURANCE COM-
PANY OF PROVIDENCE, RHODE ISLAND.

1. INSURANCE—CONSTRUCTION OF POLICY—OWNERSHIP OF PROPERTY
COVERED IN FLOATER POLICY.
   Provision in body of floater insurance policy against loss
   that property covered was personal property owned, used or
   worn by the insured and members of his family of the same
   household extended to all property covered by the policy
   and was not limited to unscheduled personal property, render-
   ing it necessary to prove ownership in insured of property
   for loss of which claim was made against insurer.

2. SAME—PRIMA FACIE CASE—POSSESSION OF LOST PERSONALTY.
   Insured established a prima facie case of his rights under a
   floater insurance policy against loss of personalty insured
   thereunder by its possession unless there is evidence that the
   property described therein belongs to another.

3. SAME—PRIMA FACIE CASE—BURDEN OF PROOF.
   When a plaintiff makes a prima facie case as to ownership of
   property insured, it then devolves upon the defendant to go
   forward with evidence that will explain away the presump-
   tion, but the ultimate burden of proof of ownership of the
   property is upon plaintiff.

4. SAME—OWNERSHIP OF STOLEN PROPERTY—EVIDENCE.
   Signed statement by daughter-in-law that stolen rings were
   hers and were a gift from her mother-in-law was admissible

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance § 206.
[1] Who is a member of insured's "family" or "household" within
   coverage of property insurance policy.  1 ALR2d 561.
[2] 29 Am Jur, Insurance § 1513.
[3, 6, 7] 20 Am Jur, Evidence §§ 4, 133.
[5–7] 20 Am Jur, Evidence § 157 *et seq.*
[8] 53 Am Jur, Trial § 349.
[9] 53 Am Jur, Trial §§ 181, 365.
[11] 3 Am Jur, Appeal and Error § 1137.

evidence tending to disprove claim of ownership by plaintiff father-in-law and mother-in-law in their action against insurer under personal property floater policy for value of the rings.

5. EVIDENCE—PRESUMPTIONS.

A rebuttable or prima facie presumption has no weight as evidence but merely establishes a prima facie case.

6. SAME—PRESUMPTIONS—REBUTTAL EVIDENCE—SUPPORTING EVIDENCE.

A presumption cannot be weighed against challenging rebuttal evidence, but when such evidence is introduced supporting evidence must be introduced and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself.

7. INSURANCE—LOSS OF PERSONALTY—REQUEST TO CHARGE—BURDEN OF PROOF.

Failure to give request to charge that the scheduling of articles in personal property floater insurance policy constituted an agreement that such articles belonged to the insured and presumptively were the property of the insured and the burden of proof was upon the insurer to establish that the insured were not the owners and also that the property was not used by the insured or by members of their family of the same household was not error, since the ultimate burden of proof was upon the insured to establish their ownership, where the insurer presented competent evidence rebutting prima facie case of ownership in insured.

8. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE.

The evidence must be viewed in a light most favorable to the opposite party when a motion to direct a verdict is made.

9. SAME—QUESTIONS OF FACT—CREDIBILITY OF WITNESSES—WEIGHT OF EVIDENCE.

The interest of the witnesses in the subject matter in dispute, their credibility and the weight to be given their evidence are questions for the jury and as between direct and circumstantial evidence, their relative convincing power is for the jury.

10. INSURANCE—FLOATER POLICY—OWNERSHIP—QUESTION FOR JURY.

Directed verdict for plaintiffs was properly denied in their action under personal property floater insurance policy, where there was some evidence which rebutted plaintiffs' claim of ownership of the rings stolen.

11. APPEAL AND ERROR—NEW TRIAL—GREAT WEIGHT OF THE EVIDENCE.

  The Supreme Court will set aside a jury's verdict on appeal from denial of a motion for a new trial only where it is clearly against the great weight of the evidence.

12. INSURANCE—FLOATER POLICY—OWNERSHIP OF STOLEN PROPERTY —EVIDENCE.

  Evidence presented as to ownership of stolen rings in insured's action under personal property floater policy for their value *held,* clearly against jury's verdict for defendant insurer, hence new trial is granted.

  BUTZEL, BUSHNELL and REID, JJ., dissenting.

Appeal from Wayne; Toms (Robert M.), J.   Submitted January 8, 1952.   (Docket No. 10, Calendar No. 45,190.)   Decided May 16, 1952.

Action by Edward Wolf and wife against Providence Washington Insurance Company of Providence, Rhode Island, under personal property floater policy for value of stolen rings. Verdict and judgment for defendant. Plaintiffs appeal. Reversed and new trial granted.

*Shapero & Shapero,* for plaintiffs.

*Cashan P. Head,* for defendant.

SHARPE, J.   This is an action at law to recover under an insurance policy for the loss of 2 rings of a scheduled value of $4,000.

On October 10, 1947, defendant, Providence Washington Insurance Company, issued an insurance policy to plaintiffs, Edward and Lottie Wolf, limiting coverage to $30,000 on unscheduled personal property, $27,575 on scheduled personal property, $2,200 on item considered separately insured, and $2,500 on unscheduled jewelry and furs. The policy provided, in part:

"PROPERTY COVERED

"1. Personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the assured, and members of the assured's family of the same household, while in all situations, except as hereinafter provided.  *  *  *

"3. Insurance attaches only with respect to those items in this paragraph for which an amount is shown and only for such amount."

Attached to and forming a part of the policy was the following:

"Item                                              Sum
  No.      Schedule of Articles Insured       Insured
"1.  One ladies platinum diamond emerald cut ring with 2 baguette diamonds in 10% iridium platinum mounting. Emerald cut diamond weighing approximately 2¼ ct. being premier color and perfect with a slight chip on the edge  . . $3,000
"2.  One ladies platinum diamond ring. Center round diamond weighing approximately 2½ ct. being cape color and imperfect with 6 round diamonds in the mounting weighing approximately .02 ct. each  1,000."

The history of the 2 rings is as follows: The $1,000 ring was originally purchased by Edward Wolf and was given to Nora Wolf when she became engaged to Morton M. Wolf, son of plaintiff, in 1937. The $3,000 ring was also purchased by Edward Wolf and given to Nora Wolf about 2 years later to console her when her first born child died. In 1946, Morton Wolf pawned the 2 rings. Edward Wolf redeemed the pledge and took possession of the rings. In November, 1947, plaintiffs together with Morton Wolf and wife went to Florida for the winter season. The 2 couples lived in adjoining apartments which were about 15 feet apart. Nora Wolf wore the rings about 5 times during the month

of January, 1948, and also wore them during Christmas week of 1947.  She again wore the rings on January 24, 1948, and when she returned she put the 2 rings in a jewelry box on her dresser in her bedroom. The next day she discovered that the rings were missing.  The police were notified, but the rings were never found.

At the trial, plaintiff Edward Wolf first testified that the $1,000 ring was bought as an engagement ring for Mrs. Lottie Wolf from a man about 35 years ago by the name of Kowal or Kroll and that it was Mrs. Wolf's engagement ring, and further that it was the only engagement ring he ever gave her. Later in the trial, he contradicted his own testimony and testified that this $1,000 ring was not the engagement stone that he had given his wife Lottie, and then for the first time stated that the engagement ring he had given his wife at the time of their marriage was a small stone, not over a carat, and that the engagement stone had never been lost.  Nora Wolf in a signed statement to the adjuster on January 30, 1948, stated that Lottie Wolf had given her the 2 rings, but in a supplemental signed statement made on February 12, 1948, stated that the rings were only given her to wear.  Lottie Wolf testified that while in New Orleans and Miami Beach, Nora Wolf was permitted to wear the rings 11 or 12 times over a period of 4 months.  The rings fitted Nora Wolf and did not fit Lottie Wolf.  Edward Wolf admitted that he had been convicted of income tax evasion.  No attempt was made by Nora Wolf or Morton Wolf to regain possession of the rings after they had been redeemed by Edward Wolf.  It also appears that Edward Wolf, Lottie Wolf, Morton Wolf and Nora Wolf severally testified that the rings in question were the property of Edward Wolf and Lottie Wolf and were loaned to Nora Wolf for occasional wearing.

During the trial, the following was introduced in evidence and made a part of the record:

"Exhibit 9
A. Greenstone's Sons
Jewelers
Metropolitan Building
Detroit 26, Michigan
Randolph 4654
December 16, 1946

"To whom it may concern:
"We have this day appraised for:
Mr. Edward Wolf
974 Sherman Ave.
Detroit, Michigan

the following jewelry items for insurance purposes.

1 Ladies platinum diamond emerald cut ring with 2 baguette diamonds in 10% iridium platinum mounting. Emerald cut diamond weighing approximately 2½ ct. being premier color and perfect with a slight chip on the edge.
Valued at ............................. $3,000

1 Ladies platinum diamond ring. Center round diamond weighing approximately 2¼ ct. being cape color and imperfect with 6 round diamonds in the mounting weighing approximately .02 ct. each.
Valued at .............................$1,000."

At the close of all proofs, plaintiffs asked the court to direct a verdict in their favor for the reason that there was no evidence establishing that the 2 rings did not belong to plaintiffs; and that the question of the loss should not be submitted to the jury because liability was not denied upon that ground. The motion was denied and the cause submitted to the jury.

The trial court submitted the following questions to the jury:

"(1) On January 25, 1948, were the plaintiffs, Edward and Lottie Wolf, either or both of them, the owners of the 2 rings described in the policy of insurance, exhibit 1?

"(2) On January 25, 1948, were the 2 rings described in the policy of insurance, exhibit 1, permanently lost, stolen or misplaced, resulting in their disappearance?"

Plaintiffs requested that the trial court give the following charge to the jury:

"(B) I charge you that as to all specifically scheduled articles, it is no defense that such articles were not owned by the assured, since as to scheduled articles, the article itself is insured."

The court refused plaintiffs' request and gave the following charge to the jury:

"Before the plaintiffs may recover they must satisfy by a fair preponderance of the facts, of the truth; first, that on January 25, 1948, they were the owners of the 2 rings described in the insurance policy, and second, that on the 24th or 25th of January, 1948, those 2 rings and no others were lost, misplaced, stolen, disappeared in a manner resulting in their permanent loss—that is, that they have never been found or received since. If the plaintiffs have established those 2 fundamental facts to your satisfaction by a fair preponderance of the evidence, your verdict would be for the plaintiffs and in the amount of $4,435, no more, no less If they have not established those 2 facts to your satisfaction by a fair preponderance of the evidence, your verdict should be for the defendant of no cause for action."

The jury returned a general verdict for defendant company and answered the specific questions that plaintiffs were not the owners of the 2 rings, but that the loss did occur.

Subsequently, plaintiffs made a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial:

"1. Because the uncontradicted evidence in the case establishes that the rings at the time of the loss were owned by Edward and Lottie Wolf, or either of them, defendant's counsel in his argument to the jury having conceded that the rings pawned with the Federal Collateral Company, as testified to by Mr. Powers, were the same rings for which claim was being made in this case, notwithstanding the discrepancy in descriptions.

"2. Because under the terms of the policy the rings themselves were specifically insured, and lack of ownership constitutes no defense.  *  *  *

"(5) Because the verdict of the jury, that plaintiffs were not the owners of the rings in question, is against the overwhelming weight of the evidence."

The trial court denied both motions. Plaintiffs appeal and urge that under the policy the 2 rings were specifically insured; and that proof of ownership thereof in plaintiffs was unnecessary. It is conceded that Morton and Nora Wolf were not members of plaintiffs' family as required in the "Property Covered" provision of the policy. In denying plaintiffs' motion for judgment notwithstanding verdict or a new trial on the ground that lack of ownership of the rings in plaintiffs is not a defense, the trial court stated:

"Counsel has raised the point that these rings were covered in a schedule attached to the policy after its original execution, in which they were specifically valued by an appraiser and their value in case of loss determined. Counsel for the plaintiff contends that this gives them a special status under the policy and that the ownership, use or wearing of the rings, as provided in paragraph 1 of the policy, is not a limitation upon the coverage, but that the

articles themselves at the indicated value in the rider are covered, subject only to their being used or in the possession of a stranger so as to stigmatize the insurance policy with the factor of wager. The court cannot adopt this construction and finds that the limitation on the coverage is that provided in section 1, paragraph 1 of the policy, and that the rider is attached for the purpose of settling the amount of loss if the loss itself is covered by the other provisions of the policy; in other words, that the rider does not either diminish or enlarge the coverage under the policy, but merely provides by a predetermined method the amount of loss, if it comes within the provisions of the policy."

The provision in the body of the policy reads as follows:

"PROPERTY COVERED

"1. Personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the assured, and members of the assured's family of the same household, while in all situations, except as hereinafter provided."

It is our opinion that the above provision was not intended to be limited in its application. Section 3 of the policy sets forth the limits of liability on 3 categories of property covered by the policy. Category (b) thereof relates to "personal jewelry, watches, furs, fine arts and other property *as per schedules attached hereto.*" The schedule is thus incorporated by express reference into section 3. There is no ambiguity in the insurance contract. No conflict between the provisions of section 1 and section 3 as amplified by the schedule. Both can be construed together so as to harmonize without distorting any of the terms. We, therefore, hold that the provisions of section 1 apply to section 3 as amplified in the schedule. The trial court was not in error

in submitting the question of ownership of the rings to the jury.

It is also urged that even if the policy covered the rings only if owned by assured, the court was in error in refusing to charge the jury that issuance of the policy was a presumption of ownership in plaintiffs. The record shows that plaintiffs' counsel offered the following request:

"(C) I charge you that the scheduling of articles in the insurance policy constitutes an agreement between plaintiffs and defendant that such articles belonged to plaintiffs, and presumptively, therefore, the rings involved in this case were the property of Edward and Lottie Wolf, and the burden of proof is upon the defendant to establish that Edward and Lottie Wolf were not the owners thereof, and also that they were not used by Edward and Lottie Wolf or by members of the family of Edward and Lottie Wolf of the same household."

Plaintiff establishes a prima facie case of his rights under an insurance policy by its possession unless there is evidence that the property described therein belongs to another. See 46 CJS, p 508. When plaintiff makes a prima facie case, it then devolves upon defendant to go forward with evidence that will explain away the presumption, but the ultimate burden of proof of ownership of the property is upon plaintiff. In the case at bar defendant urges that the evidence of plaintiffs' witnesses given on cross-examination casts doubt upon its credibility, and that the signed statement made by Nora Wolf to defendant's investigator wherein she stated that the rings were hers, a gift from her mother-in-law, overcomes the presumption of ownership in plaintiffs. We are in accord with defendant's claim that the signed statement of Nora Wolf was admissible in evidence as it tended to cast doubt on the authenticity of plaintiff's testimony.

In *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410, 414, we said:

"It is now quite generally held by the courts that a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself."

Under the facts and circumstances in this case it was not error to fail to give the requested instruction.

It is also urged that the trial court was in error in failing to give the following instruction:

"1. The evidence is undisputed that the insurance policy was issued as alleged in the declaration, that the loss occurred, that the premium was paid, that plaintiffs performed all conditions of the policy, and the value of the rings lost is agreed. I therefore direct that you bring in a verdict for the plaintiff for the full amount claimed with interest from June 24, 1948, at 5% per annum."

When a motion is made to direct a verdict, the evidence must be viewed in a light most favorable to the opposite party. See *Cole* v. *Austin,* 321 Mich 548, and *Ballinger* v. *Smith,* 328 Mich 23. The interest of the witnesses in the subject matter in dispute, their credibility and the weight to be given their evidence are questions for the jury; and as between direct and circumstantial evidence their relative convincing power is for a jury. See *Cuttle* v. *Concordia, Mutual Fire Insurance Company,* 295 Mich 514. In the case at bar there is some evidence which rebutted plaintiffs' claim of ownership of the rings. Un-

der such circumstances it was not error to refuse to given the requested instruction.

It is also urged that plaintiffs' evidence was so overwhelming as to require the court to grant a new trial. It is the rule that on motion for a new trial we only set aside the jury's verdict where it is clearly against the great weight of the evidence. See *McConville* v. *Remington Rand, Inc.*, 278 Mich 333.

It clearly appears that Edward Wolf purchased the rings and gave them to Nora Wolf; that Morton Wolf pawned the rings and they were redeemed by Edward Wolf. There is evidence that after the rings were redeemed it was agreed by Lottie Wolf, Morton Wolf and Nora Wolf that the rings would belong to Edward Wolf; and that Nora Wolf wore the rings with the consent of Lottie Wolf. Although the above evidence was given by interested parties and there is some circumstantial evidence which casts some doubt upon Edward and Lottie Wolf's ownership of the rings, nevertheless we are constrained to hold that the evidence in favor of ownership of Edward and Lottie Wolf is clearly against the verdict of the jury.

Other issues have been advanced, but in view of the fact that a new trial is granted, there is no need to discuss them.

The judgment is reversed, and the cause remanded for a new trial. Plaintiffs may recover costs.

NORTH, C. J., and DETHMERS, CARR, and BOYLES, JJ., concurred with SHARPE, J.

BUSHNELL, J. (*dissenting*). I am unable to agree with the conclusion reached by Mr. Justice SHARPE, that the evidence in favor of the plaintiffs' ownership of the insured rings "is clearly against the verdict of the jury."

At the conclusion of the testimony the trial judge indicated, outside the presence of the jury, that he would not grant plaintiffs' motion for a directed verdict, and that he was going to submit to the jury "the question of plaintiffs' ownership of the jewelry * * * and whether there was a loss of such jewelry as claimed by plaintiffs."

The court, at the request of plaintiffs' counsel, submitted 2 specific questions to the jury:

1. "On January 25, 1948, were the plaintiffs, Edward and Lottie Wolf, either or both of them, the owners of the 2 rings described in the policy of insurance, exhibit 1?"

The jury's answer to this question was "No."

2. "On January 25, 1948, were the 2 rings described in the policy of insurance, exhibit 1, permanently lost, stolen or misplaced, resulting in their disappearance?"

The jury's answer to this question was "Yes."

The verdict of the jury was not against the great weight of the evidence. I am in accord with the following statement of the trial judge:

"As to the weight of evidence to which the various witnesses were entitled, the court finds that this was a fair question of fact; that there was a genuine controversy; that the proof was not all one way, and certainly that the credibility of the witnesses cannot be eliminated as a factor in the determination of the jury."

No reversible error has been shown by appellants and, therefore, the other questions raised need no discussion.

The judgment entered upon the jury's verdict of no cause for action in favor of defendant and against plaintiffs should be affirmed.  Costs to appellee.

BUTZEL, and REID, JJ., concurred with BUSHNELL, J.