HAWKINS v REGIONAL MEDICAL LABORATORIES, PC

Docket No. 64302. Argued June 2, 1981 (Calendar No. 2).—Decided December 23, 1982.

Pietrina Hawkins, as executrix of the estate of her deceased husband Larry M. Hawkins, brought an action for wrongful death against Regional Medical Laboratories, P.C., and others, claiming that the defendants' medical malpractice caused the death of the decedent. None of the defendants rendered any treatment or services to Mr. Hawkins after April 29, 1975. He died on January 27, 1976, and the plaintiff filed this action on January 6, 1978. The Calhoun Circuit Court, Stanley Everett, J., denied the defendants' motion for accelerated judgment based on the two-year statute of limitations for actions charging malpractice, finding that the action accrued at the time of the decedent's death. The Court of Appeals, D. F. Walsh, P.J., and M. J. Kelly and Oppliger, JJ., reversed in an unpublished per curiam opinion, holding that the accrual of the action was controlled by the provisions of the Revised Judicature Act and that the two-year statute of limitations began to run after the date of the defendants' last treatment of the decedent (Docket No. 78-3051). Plaintiff appeals.

In opinions by Justice Ryan, joined by Chief Justice Fitzgerald and Justice Williams, and by Justice Levin, joined by Justice Kavanagh, the Supreme Court *held:*

Larry Hawkins died before the statute of limitations had run on his cause of action; the provisions of the Revised Judicature Act then operated to extend the time for bringing the action to two years after letters testamentary were issued but no more

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 1 Am Jur 2d, Abatement, Survival, and Revival § 67.
    22 Am Jur 2d, Death and Death Actions §§ 1, 10, 14, 92.

[3] 22 Am Jur 2d, Death and Death Actions §§ 35, 36.

[4] 22 Am Jur 2d, Death and Death Actions § 40.

[5, 7] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 316.
    Statute of limitations applicable to malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.

[6] 1 Am Jur 2d, Abatement, Survival, and Revival § 125.

than three years after the statute of limitations had run. This action was brought within that time and was therefore timely.

Justice Ryan, joined by Chief Justice Fitzgerald and Justice Williams, wrote that the action is a survival action brought under the wrongful death act, and the cause of action accrued, if at all, on the date of the wrongful act alleged, the last treatment, about April 29, 1975, and the period of limitations began to run then. Actions brought under the wrongful death act accrue as provided by the statute governing the underlying theory of liability, in this case medical malpractice. Anytime wrongful conduct results in non-instantaneous death, the claim prosecuted by the decedent's representative is a survival action enhanced by the broader measure of damages in the present wrongful death act. The action survives by law, and therefore the saving provision of the Revised Judicature Act extends the time in which to bring it to two years from the date letters testamentary or letters of administration are issued, but not more than three years after the period of limitations has run. This action was timely within the saving provision.

1. Until they were combined by the Legislature in 1939, there were two statutes under which an action could be brought in cases of injury resulting in death: the survival act and the wrongful death act. The survival act preserved causes of action which, at the common law, were terminated by the death either of the person injured or of the tortfeasor, and included actions for negligent injuries to persons. The wrongful death act created a cause of action unknown to the common law as a new remedy accruing to those who suffer loss by the death. A distinction was drawn between cases where death was instantaneous, giving an action under the wrongful death act, and cases where there was a period of survival, requiring that the action be maintained under the survival act. The distinction was crucial since the Legislature never intended to give two remedies for death by wrongful act. Thus, claims under the two acts were mutually exclusive and the measure of damages was substantially different.

2. The two actions were combined in 1939 by an amendment of the wrongful death act which provided for the repeal of any inconsistent provisions of the survival act. Causes of action continue to survive; those actions where injuries and the resulting death do not instantaneously coincide must simply be brought under the wrongful death act rather than under the former survival act. The 1939 amendment did not create a new cause of action; that was statutorily created in the pre-1939 wrongful death act and had been construed to apply only where

the wrongful act and the resulting death coincide. The post-1939 wrongful death act, then, had a dual nature: a statutory cause of action which was created by the previous wrongful death act and applied in those cases where the wrongful act and the death coincide, and the survival of other pre-existing actions, which must now be brought under the wrongful death act where death later results from the tortious conduct.

3. Before the 1939 amendment, a cause of action accrued, and the period of limitations began to run, on the date of the wrongful act for both wrongful death and survival actions. In the case of actions for wrongful death, the date of the wrongful act was effectively the same as the date of death, but in both kinds of action it was the date of the wrongful act, not the date of death, which was important. The 1939 amendment repealed only the inconsistencies between the formerly mutually exclusive causes of action, and hence did not change the date of the wrongful act as the determinant for the running of the statute of limitations.

4. In all actions brought under the wrongful death act, the limitations period is governed by the statute of limitations applicable to the theory of liability for the underlying wrongful act, and actions accrue as provided by the statutes of limitation governing the underlying theory of liability, not at the date of death. This holding overrules a case which failed to recognize that the wrongful death act before 1939 applied only to cases of instantaneous death and after 1939 applied to survival actions as well, and held that the post-1939 wrongful death act created a new remedy accruing only at death.

5. The plaintiff's cause of action is without question a survival action. Mr. Hawkins had a fully vested cause of action for medical malpractice, if he had one at all, on April 29, 1975, the last date of treatment. Absent any saving or tolling provision, the action would be untimely if it were brought anytime after April 29, 1977. However, there is a saving statute which extends the time in which an action which survives by law could be brought by or against a personal representative of a decedent; the statute applies to tortious acts resulting in non-instantaneous death, that is, actions under the survival act. The personal representative has an additional two years from the date of the issuance of letters testamentary in which to bring suit, but not more than three years after the limitations period has run.

6. The record does not disclose when Mrs. Hawkins was named executrix, but since she brought the action within two

years of her husband's death and within three years of April 29, 1977, she did so within the saving provision.

Justice Levin, joined by Justice Kavanagh, agreed that the action was timely commenced because of the tolling provisions of the Revised Judicature Act. He would not attempt by dictum to resolve the question which has divided the Court of Appeals, whether the cause of action for wrongful death arising from medical malpractice accrues at the time of the last treatment or the date of death, because it is not necessary to decision in this case.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.

OPINION BY RYAN, J.

1. DEATH — WRONGFUL DEATH — SURVIVAL OF ACTIONS.

*The wrongful death act applies to all actions for injuries resulting in death; actions pursuant to the survival statute, which preserves causes of action which under common law ended with the death of the injured person or the tortfeasor, were incorporated into the wrongful death act in 1939 to form a single ground of recovery (MCL 600.2922; MSA 27A.2922).*

2. DEATH — SURVIVAL OF ACTIONS — WRONGFUL DEATH.

*The Revised Judicature Act specifically provides that causes of action survive death; actions for injuries which result in death must be brought under the wrongful death act, which enlarges the elements of damage, but that requirement does not change the character of the cause of action (MCL 600.2921, 600.2922; MSA 27A.2921, 27A.2922).*

3. LIMITATION OF ACTIONS — WRONGFUL DEATH — SURVIVAL OF ACTIONS.

*The statute of limitations applicable to the theory of liability for the underlying wrongful act governs an action brought under the wrongful death act (MCL 600.2922; MSA 27A.2922).*

4. LIMITATION OF ACTIONS — ACCRUAL — WRONGFUL DEATH.

*Actions brought under the wrongful death act accrue as provided by the statutes of limitation governing the underlying theory of liability and not at the date of the decedent's death (MCL 600.2922; MSA 27A.2922).*

5. LIMITATION OF ACTIONS — DEATH — SURVIVAL OF ACTIONS.

The Revised Judicature Act operates to extend the time in which to bring suit on a surviving cause of action where the death does not instantaneously result from the wrongful conduct; a

cause of action for medical malpractice which accrued to the decedent in his lifetime is preserved unabated by the statute, and the executor of the decedent's estate may pursue it to judgment where the executor brought the action within two years of the decedent's death and within three years of the date of last treatment (MCL 600.5852; MSA 27A.5852).

Opinion by Levin, J.

6. Limitation of Actions — Survival of Actions — Tolling.

The Revised Judicature Act provides that where a person dies before the period of limitation for bringing an action has run or within 30 days thereafter, an action which survives by law may be commenced within two years after letters testamentary or of administration are granted, although the period of limitation has run, but may not be commenced beyond three years after the period of limitation has run (MCL 600.2921, 600.5852; MSA 27A.2921, 27A.5852).

7. Limitation of Actions — Survival of Actions — Tolling.

An action for malpractice brought on behalf of the estate of a decedent within two years of the death of the decedent and the issuance of letters testamentary was timely commenced even though the cause of action accrued more than two years prior to the bringing of the action where the decedent had died before the period of limitation had run because the provisions of the Revised Judicature Act operated to extend the time for bringing the action to two years after the letters testamentary were issued (MCL 600.5852; MSA 27A.5852).

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *John G. Konkel* and *J. Douglas Peters*), for plaintiff.

*Sullivan, Hamilton, Ryan & Schulz* (by *James M. Sullivan*) for defendants.

Ryan, J. Plaintiff, as executrix for the estate of her deceased husband, Larry M. Hawkins, brought suit against defendants alleging medical malpractice resulting in death.

In March of 1975, Dr. Spencer removed a tumor-like mass from the hip of Mr. Hawkins. A speci-

men was examined by Dr. Collins, a member of Regional Medical Laboratories, who diagnosed it as non-cancerous. The wound did not heal as expected and there continued an excess accumulation and drainage of fluid. A specimen of fluid was examined by Dr. Walters who also found no evidence of malignancy. Mr. Hawkins failed to recover and on April 29, 1975 he was transferred to the University of Michigan Hospital in Ann Arbor. After that date, none of the defendants rendered any further treatment or services to Mr. Hawkins.

Very shortly after his transfer to Ann Arbor, Mr. Hawkins' condition was diagnosed as a malignant fibrous histiocytoma (cancerous tumor). As treatment, he underwent a hemipelvectomy (amputation of one leg and half the pelvis). In her complaint, plaintiff alleges that, despite this surgery, a subsequent spread of the malignancy caused Mr. Hawkins' death on January 27, 1976.

On January 6, 1978, plaintiff filed this action, claiming that defendants' medical malpractice caused her husband's death. Defendants moved for accelerated judgment, claiming that the suit was barred by the malpractice statute of limitations. MCL 600.5805(4); MSA 27A.5805(4). The motion was denied. On appeal the Court of Appeals reversed, holding that proper application of the statute barred the action.

We granted leave to appeal primarily to determine "whether plaintiff's claim under the wrongful death act accrued on the date of [the decedent's] death or in accordance with the accrual provisions of the malpractice statute of limitations (MCL 600.5838; MSA 27A.5838)". 410 Mich 870 (1980).

I

An appreciation of several statutory provisions involved in this dispute is necessary for an understanding of the discussion which follows.

MCL 600.2921; MSA 27A.2921, dealing with the survival of actions, states:

"All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death."

MCL 600.2922; MSA 27A.2922, is the wrongful death statute. Its pertinent provisions are:

"(1) Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought only under this section.

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, under all of the circumstances to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the

pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death."

MCL 600.5805; MSA 27A.5805 sets out various limitations periods. Its applicable provisions before its amendment in 1978 were:

"No person may bring or maintain any action to recover damages for injuries to persons or property unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.

* * *

"(3) The period of limitations is 2 years for actions charging malpractice.

* * *

"(7) The period of limitations is 3 years for all other actions to recover damages for injuries to persons and property."[1]

MCL 600.5827; MSA 27A.5827 provides:

"Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

MCL 600.5838; MSA 27A.5838 referred to by the above provision, prior to amendment in 1975, stated:

---

[1] 1978 PA 495 revised the language and renumbered the subsections of MCL 600.5805; MSA 27A.5805 but otherwise affected no substantive provisions applicable to the issues in this case.

"A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudo-professional capacity as to the matters out of which the claim for malpractice arose."[2]

A

Plaintiff's fundamental contention is that the wrongful death statute creates a new and independent cause of action which arises only at death. Therefore, she argues, the limitation period cannot begin to run until that cause of action "accrues" at death. Defendants counter that the limitations period begins running on the date of last treatment as provided for medical malpractice actions in MCL 600.5827; MSA 27A.5827 and MCL 600.5838; MSA 27A.5838.

A proper understanding of the history of the wrongful death act is essential for an adequate understanding of our resolution of the issue.

Prior to 1939, two statutes existed under which an action could be brought in cases of injury resulting in death: the survival act and the wrongful death act. Early in its history, Michigan adopted a rather liberal "survival act" to preserve causes of action which, under common law, were

---

[2] At the time this cause of action arose, the rule of *Dyke v Richard*, 390 Mich 739; 213 NW2d 185 (1973), applied. *Dyke* entitled a plaintiff to a two-year extension on the limitations period from the time of discovery of malpractice. 1975 PA 142 has since reduced the extension to six months from the time of discovery or two years from last treatment, whichever is greater. The additional changes effected by this 1975 amendment did not affect provisions controlling the issues before us.

In Mrs. Hawkins' case, discovery of the alleged malpractice unquestionably occurred no later than early May, 1975. This is essentially the same as the date of last treatment. As there is no difference in the outcome regardless of which date is used, we will assume, for ease of discussion, that discovery occurred at the date of last treatment, April 29, 1975.

terminated by the death either of the person injured or the tortfeasor. 1846 Rev Stats, ch 101, § 5. This act was amended by 1885 PA 113 and 1897 PA 148 to include, as surviving actions, fraud, deceit and negligent injuries to persons. It was perpetuated in this form by the former Judicature Act (former 1915 CL 12383; 1929 CL 14040) and read:

"In addition to the actions which survive by the common law the following shall also survive, that is to say, actions of replevin, actions for the conversion of property, for deceit, for assault and battery, for false imprisonment, *for negligent injuries to persons,* for damages done to real and personal estate, and actions to recover real estate, or any interest therein, where persons have been induced to part with the same through fraudulent representations and deceit." (Emphasis added.)

In 1848, pursuant to 1848 PA 38, the so-called "death act" was passed and remained unchanged until amended in 1939. Prior to the 1939 amendment, § 1 of the act (1929 CL 14061) read:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured."

The interplay between these two statutes was examined by this Court in *Ford v Maney's Estate,* 251 Mich 461, 464-465; 232 NW 393 (1930):

"The courts are in conflict upon the respective scope

and operation of the death act and survival statute. LRA 1915E, 1119, note; LRA 1916C, 973, note. In this State it is held that the death act created a cause of action unknown to the common law, not by way of survival of a right accruing to the deceased which before had abated at [his] death, but as a new and special remedy accruing to those who suffer loss by the death; and that the legislature did not intend to give two remedies for death by negligent act, but that the death act and the survival act is each exclusive within its sphere. The line of cleavage between them is whether the death is instantaneous. The legal test of instantaneous death was devised in order to afford a practical working of the statutes, death being seldom instantaneous in fact. The test was established, not in an attempt to bring the acts into harmony with common-law principles but by way of judicial interpretation of legislative intention in the construction of statutes which change the common law and have points of conflict. *Sweetland v Chicago & G T R Co,* 117 Mich 329 [75 NW 1066 (1898)]; *Dolson v Lake Shore & M S R Co,* 128 Mich 444 [87 NW 629 (1901)]; *Lincoln v Detroit & M R Co,* 179 Mich 189 [146 NW 405 (1914)]; *Paperno v Michigan Railway Engineering Co,* 202 Mich 257 [168 NW 503 (1918)]."

It is clear from this language that a distinction was drawn as to whether death from a wrongful act was instantaneous, in which case the action lay under the "wrongful death" statute, or whether there was a period of survival, thus requiring that the action be maintained under the "survival act". This distinction was crucial since the claims were mutually exclusive and the measure of damages was substantially different. *Lincoln v Detroit & M R Co,* 179 Mich 189; 146 NW 405 (1914); *Crook v Eckhardt,* 281 Mich 703; 275 NW 739 (1937).

The strict application of this temporal distinction not only spawned numerous suits over what "instantaneous death" meant, *Olivier v Houghton*

*County Street-Railway Co,* 134 Mich 367; 96 NW
434 (1903); *Nelson v Glover,* 231 Mich 229; 203
NW 840 (1925); *Ford v Maney's Estate, supra;
Janse v Haywood,* 270 Mich 632; 259 NW 347
(1935); *Crook v Eckhardt, supra; In re Beiersdor-
fer's Estate,* 297 Mich 592; 298 NW 294 (1941), but
also created pleading problems where the "time of
death" issue was close. *Carbary v Detroit United
Railway,* 157 Mich 683; 122 NW 367 (1909); *Ander-
son v Jersey Creamery Co,* 278 Mich 396; 270 NW
725 (1936); *Lucy v Dowd,* 285 Mich 530; 281 NW
314 (1938).

Confusion in the application of these two stat-
utes was ended when the Legislature, by the en-
actment of a new wrongful death act, 1939 PA
297, combined the two acts, requiring that all
actions for injuries resulting in death be brought
thereunder. 1939 PA 297 actually took the form of
an amendment to the existing wrongful death act
and provided for the repeal of any inconsistent
provisions of the "survival act". In pertinent part
it read:

"An Act requiring compensation for causing death
and injuries resulting in death by wrongful act * * *:
"Sec. 1. * * * [W]henever the death of a person or
injuries resulting in death, shall be caused by wrongful
act, neglect or default, and the act, neglect or default is
such as would (if death had not ensued) have entitled
the party injured to maintain an action and recover
damages, in respect thereof, then and in every such
case, the person who, or the corporation which would
have been liable, if death had not ensued, shall be
liable to an action for damages, notwithstanding the
death of the person injured, and although the death
shall have been caused under such circumstances as
amount in law to felony. All actions for such death, or
injuries resulting in death, shall hereafter be brought
only under this act.

"Sec. 2. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death, to those persons who may be entitled to such damages when recovered and also damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death: * * *

"Sec. 3. Insofar as the provisions thereof are inconsistent with the provisions of act number 38 of the public acts of 1848 as amended by this act, section 32 of chapter 12 of act number 314 of the public acts of 1915, being section 14040. of the compiled laws of 1929 is hereby repealed."

After some initial difficulty in construing this new statute, it was made unmistakably clear by this Court in *In re Olney's Estate,* 309 Mich 65; 14 NW2d 574 (1944), that the survival act was not repealed but was incorporated into the new death act to form a single ground of recovery in cases where tortious conduct caused death.

The language of Chief Justice North's majority opinion in *Olney* is critical to full appreciation of the scope of the present wrongful death statute.[3] He wrote:

"Act No. 297, Pub. Acts 1939 * * * does not repeal, but instead only amends, our so-called death act. * * * Nor does the 1939 act repeal our so-called survival statute * * * except in so far as [it] is 'inconsistent'

[3] Amendment of the wrongful death act by enactment of 1971 PA 65 did not affect any provision controlling the issues in this case.

with the 1939 act.[4] And we do not find [the survival act] at all inconsistent with any provision in the 1939 act, except that section 1 in the latter act provides: 'All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.' [The survival statute] is still part of our statutory law * * *.

* * *

"Above we have stated that the 1939 act does not repeal the death act * * *. Instead, [the existing death act], which provided the statutory right of action in death cases, was literally reenacted, with the modifications about to be noted, in section 1 of [the 1939 act] which reads:

" 'Be it enacted by the senate and house of representatives of the State of Michigan, whenever the death of a person *or injuries resulting in death,* shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. *All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act.'*

"The italicized words in the above section disclose the only changes made by the 1939 reenactment. * * * [T]he obvious purpose of the 1939 act was to enable a person to bring his action under this statute regardless of whether there was instantaneous death or survival of the injured person, and to provide to what person or persons the damages recovered should be 'distributed'." (Emphasis in original.) *Olney, supra,* pp 80-82.

See also *Grimes v King,* 311 Mich 399; 18 NW2d 870 (1945).

---

[4] In *Baker v Slack,* 319 Mich 703; 30 NW2d 403 (1948), it was decided that the repeal of inconsistencies went only to the measure of damages.

It cannot be doubted that causes of action continue to survive. MCL 600.2921; MSA 27A.2921 specifically states "[a]ll actions and claims survive death". Those based on injuries resulting in non-instantaneous death must simply be brought under the present wrongful death act rather than under the survival act. We do not construe the 1939 wrongful death act as creating an entirely new statutory cause of action unknown at common law. That new cause of action was statutorily created in the pre-1939 wrongful death act and had been judicially interpreted to apply only to those cases where the wrongful act and the resulting death coincide. The 1939 wrongful death act re-enacted the old death act and joined it with a class of survival actions to form a single cause of action in the stead of two previously separate causes of action for injuries and death. Survival actions, which undoubtedly still exist, must now be brought under the provisions of the 1939 wrongful death act whenever non-instantaneous death results from the tortious conduct.

This dual nature of the 1939 statute was properly recognized by the United States Court of Appeals for the Second Circuit which interpreted the Michigan statute in *Janes v Sackman Brothers Co*, 177 F2d 928 (CA 2, 1949). In *Janes*, the federal court found that the action was premised on the survival act element of the wrongful death statute since the plaintiff's decedent did not die instantaneously after he was severely burned. The plaintiff was appointed administrator over four years after the death and brought a products liability action. The court found that action "survived by law" the decedent's death and thus would benefit from the saving provision of MCL 609.18; MSA 27.610, the predecessor of MCL 600.5852; MSA 27A.5852, which now reads:

"If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by or against the executor or administrator of the deceased person * * * at any time within 2 years after letters testamentary or letters of administration are granted * * *. But no executor or administrator shall bring an action under this provision unless he commences it within 3 years after the period of limitations has run."

B

Prior to the 1939 amendment of the wrongful death act, there was little difficulty in assessing when a cause of action accrued and hence when the limitations period began to run. Under both the survival act and death act the focus was on the date of the wrongful act. In *Lincoln v Detroit & M R Co, supra,* 196, this Court reasoned that as to actions under either the death act or the survival act, "[b]oth are dependent on the injury". A cause of action brought under the death act accrued at the date of the wrongful act, which of course was effectively the same as the date of death. *Lincoln, supra.* Whenever there was survival for a period after the wrongful act, the cause of action, if any, accrued at the time of the wrongful act. *Ford v Maney's Estate, supra.* There was nothing inconsistent in the approach under either act. The focus has always been on the date of the wrong. Therefore, and because the 1939 amendment repealed *only* the inconsistencies between the formerly mutually exclusive causes of action, for purposes of determining the commencement of the running of the statute of limitations the focus remains on the date of the wrongful act, not on the date of death.

II

This understanding of the dual nature of the

present wrongful death act, including judicial focus upon the date of the wrongful act and not the date of death, makes the resolution of the issues before us clear.

Plaintiff's cause of action is without question one rooted in the survival aspect of the wrongful death act. The mere fact that our legislative scheme requires that suits for tortious conduct resulting in death be filtered through the so-called "death act", MCL 600.2922; MSA 27A.2922, does not change the character of such actions except to expand the elements of damage available. Mr. Hawkins had a fully vested cause of action, if at all, on or about April 29, 1975, the date of the alleged wrongful act. He lived until January of 1976. His cause of action, if any, having accrued at the date of the wrongful act, the applicable limitations period began to run from that date.

The litigants are in agreement that the limitations period applicable is the two-year provision of MCL 600.5805(4); MSA 27A.5805(4). *Weiss v Bigman,* 84 Mich App 487; 270 NW2d 5 (1978), *lv den* 405 Mich 820 (1979); *Olijnyk v Harrison Community Hospital, Inc,* 80 Mich App 366; 263 NW2d 33 (1977), *lv den* 402 Mich 922 (1978); *Castle v Lockwood-MacDonald Hospital,* 40 Mich App 597; 199 NW2d 252 (1972). We agree and expressly hold that in all actions brought under the wrongful death statute, the limitations period will be governed by the provision applicable to the liability theory of the underlying wrongful act. The Court applied this reasoning in *Rhule v Armstrong,* 384 Mich 709; 187 NW2d 223 (1971), where it found the three-year period "for injuries to persons and property" applicable to claims brought under MCL

600.2922; MSA 27A.2922 and based on ordinary negligence.

Additionally, we hold that actions brought pursuant to MCL 600.2922; MSA 27A.2922 accrue as provided by the statutory provisions governing the underlying liability theory and not at the date of death. In this case, since the action is based on medical malpractice, the claim accrued on or about April 29, 1975, the date of last treatment.

By this holding we overrule *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965). The *Coury* holding that a "cause of action for a wrongful death and damages resulting therefrom accrues when that death occurs", was based on language found in *Lincoln v Detroit & M R Co, supra,* a case discussing the nature of the wrongful death act *prior* to the 1939 amendment. Insofar as *Coury* failed to recognize that the wrongful death act before 1939 applied only to cases of instantaneous death and after 1939 applied as well to what once were separate survival actions, and in light of the majority opinion in *In re Olney, supra,* it cannot stand for the proposition that the post-1939 death act created a "new and special remedy accruing to those who suffer loss by the death"[5] and thus accrues only at death.

III

Having found that the action brought by Mrs. Hawkins is a survival action which must be brought under the terms of MCL 600.2922; MSA 27A.2922, and which is governed by the limita-

[5] *Coury v General Motors Corp,* 376 Mich 248, 251; 137 NW2d 134 (1965), quoting from *Ford v Maney's Estate,* 251 Mich 461, 464; 232 NW 393 (1930).

tions provisions applicable to medical malpractice, we must now determine whether her action is barred.

Mr. Hawkins' cause of action accrued on or about April 29, 1975 and he had two years in which to bring suit. He died on January 27, 1976. That cause of action survived his death and was brought by Mrs. Hawkins on January 6, 1978. Absent any saving or tolling provision, the action would be untimely if brought anytime after April 29, 1977.

As indicated above, although the post-1939 death act encompasses a class of actions formerly brought under the survival act, we are not persuaded that the essential character of those actions has changed. Any time wrongful conduct results in non-instantaneous death, the claim prosecuted by an appropriate representative is a survival action enhanced by the broader measure of damages in the current death act. It survives by law the decedent's death pursuant to MCL 600.2921; MSA 27A.2921. There is no reason to doubt, as recognized by the *Janes* court, that statutory references to actions surviving by law include those actions brought under MCL 600.2922; MSA 27A.2922 for non-instantaneous death resulting from wrongful conduct. Therefore, MCL 600.5852; MSA 27A.5852 operates to extend the time in which to bring such suits. That statute, quoted above, gives the fiduciary an additional two years from the date of issuance of letters testamentary in which to bring suit provided that, in any event, the fiduciary brings suit not more than three years after the limitations period has run.

The record does not disclose when Mrs. Hawkins

was named executrix, but since she instituted this action within two years of her husband's death and within three years of April 29, 1977, she did so within the provisions of this saving statute. She is entitled to maintain this action.

Our holding today runs contrary to that in *Rhule v Armstrong, supra,* and insofar as it does, we overrule *Rhule.* In *Rhule,* the Court incorrectly relied on the dissenting opinion of Justice SHARPE in *In re Olney's Estate, supra,* as if it were the majority, thus concluding that the 1939 amendment to the death act created a new cause of action precluding the survival of any action. Chief Justice NORTH's majority opinion in *Olney* clearly held otherwise. We find the interpretation given to the post-1939 death act and its relationship to the saving provision of MCL 600.5852; MSA 27A.5852, as announced by the federal circuit court in *Janes v Sackman Brothers Co, supra,* to be correct.

To summarize, we hold that in this case the proper application of the pertinent statutes guarantees survival of the cause of action which accrued to the decedent in his lifetime, enlarges the elements of damage so as to include those authorized under the wrongful death act, preserves the original action unabated by the death of Mr. Hawkins and authorizes the executrix of his estate to pursue it to judgment.

We affirm, although for the different reasons discussed, that portion of the Court of Appeals opinion holding that the cause of action accrued on the date of last treatment; however, we remand to the circuit court because of the applicability of the saving provision of MCL 600.5852; MSA

27A.5852, an issue left unaddressed by the Court of Appeals.

FITZGERALD, C.J., and WILLIAMS, J., concurred with RYAN, J.

LEVIN, J. (concurring). We agree with the lead opinion that this medical malpractice action was timely filed because the time for commencing this action was tolled by the provisions of § 5852 of the Revised Judicature Act.[1]

Section 5852 provides that if a person dies before the period of limitations has run or within thirty days thereafter, an action which survives by law[2] may be commenced at any time within two years after letters testamentary or of administration are granted, although the period of limitations has run, but no action shall be commenced beyond three years after the period of limitations has run.

It appears that plaintiff's decedent, Larry M. Hawkins, was last treated in April, 1975. Plaintiff's brief accepts the Court of Appeals determination that "the statute of limitations began to run

---

[1] "If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by or against the executor or administrator of the deceased person or the claim may be proved as a debt against the estate of the deceased person, as the case may be, at any time within 2 years after letters testamentary or letters of administration are granted, although the period of limitations has run, subject to the limitations provided in section 20 of chapter 8 of Act No. 288 of the Public Acts of 1939, being section 708.20 of the Compiled Laws of 1948. But no executor or administrator shall bring an action under this provision unless he commences it within 3 years after the period of limitations has run." MCL 600.5852; MSA 27A.5852.

[2] "All actions and claims survive death." MCL 600.2921; MSA 27A.2921.

We agree with the lead opinion that if a medical malpractice action for wrongful death were to be held to accrue before death that it is a claim that survives death.

in May of 1975", and the lead opinion so concludes. It, therefore, appears that the two-year period of limitations for an action charging malpractice[3] then began to run. Plaintiff's decedent died on January 27, 1976, within two years of May, 1975. This action was commenced on January 6, 1978, within two years of the issuance of letters testamentary.[4] Accordingly, this action was timely commenced.

We would not by *obiter dictum* attempt to resolve the question which has divided the Court of Appeals[5] of whether the cause of action for wrong-

[3] "(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\* \* \*

"(4) The period of limitations is 2 years for an action charging malpractice." MCL 600.5805; MSA 27A.5805.

[4] The letters could not have been issued before the date of death, January 27, 1976.

[5] In the instant case, *Hawkins v Regional Medical Laboratories, PC,* 111 Mich App 651, 656; 314 NW2d 450 (1979), the Court declared:

"[I]n wrongful death actions claiming malpractice, the cause of action commences as provided by the statutory provision relating to the commencement of actions for medical malpractice, *and not at the time of death as plaintiff urges.*" (Emphasis supplied.)

In *Penner v Seaway Hospital,* 102 Mich App 697, 703-704; 302 NW2d 285 (1981), the Court declared:

"The *date of death* must be considered as the date of accrual of a cause of action for wrongful death, regardless of whether death is caused by general negligence or medical malpractice." (Emphasis supplied.)

In *Palmertree v Genesee Memorial Hospital,* 102 Mich App 683; 302 NW2d 279 (1981), a divided Court declared:

"Likewise, in wrongful death cases which are grounded on medical malpractice, regardless of when the malpractice cause of action accrues, the wrongful death plaintiff's cause of action *could not accrue until death occurred.*" (Emphasis supplied.)

In *Girz v Endress,* 117 Mich App 783; 324 NW2d 502 (1982), the Court declared:

"We believe that *Palmertree* and *Penner* reached the correct result in holding that a wrongful death action grounded in medical malpractice *accrues at the time of death.*" (Emphasis supplied.)

ful death arising from medical malpractice accrues at the time of the last treatment[6] or the date of death. That issue is important where the person whose death is alleged to have been caused by medical malpractice dies more than thirty days after the period of limitations has run. We would not appear to prejudge the issue necessary to decision in such a case by discussing it in this case where it is not necessary to decision.

We concur in reversal of the Court of Appeals and remand for trial.

KAVANAGH, J., concurred with LEVIN, J.

COLEMAN and RILEY, JJ., took no part in the decision of this case.

---

[6] "(1) A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession, * * * accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

"(2) An action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred." MCL 600.5838; MSA 27A.5838.