**Jo Ann KANE, Personal Representative of the Estate of John Kane, Deceased, Plaintiff–Appellant,**

v.

**Jil ROHRBACHER, et al., Defendants–Appellees.**

No. 95–1056.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1996.

Decided May 21, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 16, 1996.

Wilbur C. Jacobs (argued and briefed), Toledo, OH, for Plaintiff–Appellant.

James H. Mulcahy (argued and briefed), Lizza, Mulcahy & Casey, Detroit, MI, for Defendants–Appellees.

Before: MERRITT, Chief Judge; CONTIE and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff/Appellant seeks to recover as personal representative for the wrongful death of her husband in this diversity case governed by Michigan law. She claims that the death was caused by complications from a 1988 automobile accident between the decedent and the named defendant. Plaintiff was party to a 1990 settlement between decedent and defendant, for which decedent received

nearly $500,000 plus legal fees in satisfaction of all claims. The settlement included damages for "subsequent death or disability." Despite the settlement, plaintiff filed the present action shortly after her husband's death in May 1993. The District Court held that the applicable Michigan statute of limitations barred any claim for wrongful death filed more than three years after the time of decedent's accident. We affirm the District Court, but reserve the statute of limitations question, finding instead that the terms of the 1990 settlement agreement and Michigan law prohibit plaintiff from pursuing the present action.

This case turns on whether the Michigan wrongful death statute, Mich. Comp. Law Ann. § 600.2922 (West 1986), creates an action that is "independent" from the injured party's own claim or "derivative" of it. If the action is independent, it does not come into existence until the date of the injured party's death, and thus it cannot be waived by a pre-death settlement agreement. If, however, the Michigan cause of action for wrongful death is derivative, the entry of a settlement agreement during decedent's life would preclude his personal representative from recovering additional amounts through a subsequent action.

Though no Michigan court has specifically held that a pre-death settlement agreement by an injured party bars a subsequent wrongful death action by decedent's personal representative, under Michigan precedent it is clear that a wrongful death action is derivative, rather than independent, of a decedent's underlying tort action. For example, in *Hawkins v. Regional Medical Laboratories, P.C.*, 415 Mich. 420, 329 N.W.2d 729 (1982), a case in which the Michigan Supreme Court detailed the extensive history of Michigan's wrongful death statute, the court held that "[a]ny time wrongful conduct results in non-instantaneous death, *the claim prosecuted by an appropriate representative is a survival action* enhanced by the broader measure of damages in the current death act." 329 N.W.2d at 736 (emphasis added).

The derivative nature of the Michigan wrongful death action is evident from the face of the statute:

Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, *if death had not ensued, have entitled the party injured to maintain an action and recover damages*, the person who or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

M.C.L.A. § 600.2922(1) (emphasis added). The Michigan Supreme Court, citing the above emphasized language, has held: "The act clearly provides not that death creates a cause of action, but that death does not extinguish an otherwise valid cause of action." *Hardy v. Maxheimer*, 429 Mich. 422, 416 N.W.2d 299, 307 n. 17 (1987). Similarly, the Michigan Court of Appeals has held that "the [wrongful death] action brought by the personal representative is a derivative one, and the representative in effect stands in the shoes of the decedent." *Ballard v. Southwest Detroit Hosp.*, 119 Mich.App. 814, 327 N.W.2d 370, 371 (1982). The *Ballard* court held that the wrongful death act was derivative in nature in spite of the fact that the act provides for the recovery by the personal representative of damages, such as those for loss of society and companionship, that could not have been recovered by the deceased. The court stated: "[A]lthough the Michigan wrongful death act provides for additional damages benefitting the decedent's next of kin for loss of society and companionship, it does not create a separate cause of action independent of the underlying rights of the decedent. Rather, the cause of action is expressly made derivative of the decedent's rights." 327 N.W.2d at 371–72 (citing *Maiuri v. Sinacola Const. Co.*, 382 Mich. 391, 170 N.W.2d 27 (1969), and contrasting the Michigan statute with the California wrongful death statute, which creates an independent cause of action in favor of the personal representative).

*Ballard v. Southwest Detroit Hospital* is the closest Michigan case on point. The Michigan Court of Appeals, while holding a particular medical arbitration agreement unenforceable, held that a personal representa-

tive is bound by a prior arbitration agreement to the same extent a decedent would be bound if he or she had survived. 327 N.W.2d at 372. The reasoning which leads to this conclusion for medical arbitration agreements holds for settlements as well. In the words of the *Ballard* court, any "substantive impediment that would have prevented the decedent from commencing suit will likewise preclude suit by the personal representative." *Id.* We note that *Ballard* appears to be in line with other state courts. Both the Restatement (Second) of Judgments and the Restatement (Second) of Torts observe that a majority of jurisdictions have similar rules which prohibit wrongful death suits when settlements or judgments have been entered. *See* Restatement (Second) of Judgments § 46 cmt. b at 18 ("[T]he injured person and his statutory beneficiaries are in effect successively eligible representatives to bring an action for loss resulting from the tortious act. A judgment in an action by the decedent for his injuries has the same preclusive effects on them as it has on him."); Restatement (Second) of Torts § 925 cmt. a at 528 ("[I]f no action could have been brought by the deceased if still alive, no right of action exists. Likewise a release by the deceased ... bars an action after the death.").[1]

On its face, the 1990 settlement agreement between decedent and defendant bars this action. The agreement defines "Plaintiff" to "collectively mean John Kane and Jo Ann Kane, their heirs, executors, administrators, personal representatives, successors and assigns." J.A. at 38. In the Agreement, signed by both John and Jo Ann Kane, along with their lawyers, the Kanes released defendants "from any and all past, present or future claims for damages for personal and physical injuries which Plaintiff claims to have." The Agreement defines personal and physical injuries to include those "that are unknown to Plaintiff at present" and those that "may arise, develop or be discovered in the future, *including, but not limited to, subsequent death or disability.*" J.A. at 39 (emphasis added). The Kanes further waived "any right to assert in the future any claims not now known or suspected, even though, if such claims were known, such knowledge would materially affect the terms of this Settlement Agreement." *Id.* In consideration for this release, the Kanes received $470,484, paid in 10 yearly installments. J.A. at 40. The attorneys for the Kanes, one of whom has brought the present action, received an additional $235,975. *Id.*

The Kanes reasonably could have wanted to settle for a fixed amount all of the claims arising out of decedent's accident, including any future claim for wrongful death, in order to enjoy the proceeds while decedent was still living. The language of the agreement, signed by decedent, plaintiff, and plaintiff's appellate counsel, supports this reading of the Kanes' intent. Michigan law does not require a contrary result. Accordingly, the decision of the District Court is AFFIRMED.

---

1. The United States Supreme Court addressed the question of survivors' successive suits for wrongful death damages in the maritime context in *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). While a 5–4 majority of the Court created a federal common law wrongful death remedy that would allow the personal representative of a deceased longshoreman to recover non-duplicative damages even when the decedent had recovered for personal injuries during his lifetime, the *Sea–Land* Court noted that "a majority of courts interpreting state and federal wrongful-death statutes have held that an action for wrongful death is barred by the decedent's recovery for injuries during his lifetime." *Id.* at 579–80, 94 S.Ct. at 812–13 (noting that the language of the first English wrongful death statute, Lord Campbell's Act, has made it into most state statutes in this country and has been interpreted, as has the English act, to bar wrongful death recoveries when a deceased has settled or released his tortfeasor). The four-Justice dissent similarly noted that under the "great majority" of state wrongful death statutes, a survivor's action would be foreclosed by a decedent's recovery during his lifetime. *Id.* at 602–03, 94 S.Ct. at 823–24 (Powell, J., dissenting) (citing one commentator's count that 23 jurisdictions have so held "in the clearest terms and some half a dozen more have so indicated in dicta"). Justice Powell in dissent also noted that Dean Prosser counted only nine or ten contrary jurisdictions, and that this view is "largely confined to jurisdictions which do not allow the decedent to recover for his own curtailed life." 414 U.S. at 603 n. 9, 94 S.Ct. at 823 n. 9 (quoting W. Prosser, *The Law of Torts* 912 (4th ed.1971)).