Corrigan, C.J.
(concurring in part and dissenting in part). Although I agree with the majority that the noneconomic damages cap found in MCL 600.1483 applies to wrongful death actions alleging malpractice and that a jury is permitted in all “personal injury, property damage, or wrongful death” tort actions to consider a plaintiffs pretreatment negligence as comparative negligence to offset a defendant’s fault (provided evidence has been admitted that would allow a reasonable person to conclude such negligence was “a proximate cause” of the plaintiffs injury), I cannot join the majority’s treatment of the remaining issues and respectfully dissent.
First, because defendants were precluded from submitting evidence that arguably would have allowed a reasonable person to find that Betty Shinholster’s pretreatment negligence of failing to regularly take her prescribed blood pressure medication during the year preceding her fatal stroke was a proximate cause of her fatal stroke, I would reverse and remand for a new trial on all issues, rather than a trial on damages only.
I would further hold that the higher damages cap found in MCL 600.1483 does not apply to wrongful death actions alleging medical malpractice. MCL *583 600.1483(1) provides that the lower cap applies unless one of the enumerated exceptions applies. Death is not an enumerated exception. This Court is not free to question the Legislature’s policy choices; rather, the statutory language must be applied as written.
Finally, I would hold that the jury’s award of future damages should have been reduced to present value pursuant to MCL 600.6306. MCL 600.6311 provides that the reduction to present value does not apply to “a plaintiff who is 60 years of age or older at the time of judgment.” I believe that MCL 600.6311 cannot apply in wrongful death cases because, in such cases, the true “plaintiff” is the estate, which is not a person and does not have an “age.”
I. ANALYSIS
A. A NEW TRIAL ON ALL ISSUES IS REQUIRED
Although I agree with the majority that decedent’s pretreatment negligence is a matter properly submitted to the jury, I do not agree that the new trial should be limited to damages only. Because of the trial court’s ruling that all decedent’s pretreatment negligence could not be considered, defendants were limited to submitting evidence that decedent was comparatively negligent from April 7 onward, when she first visited the emergency room. Yet, it is apparent from that testimony that had a wider scope of questioning been allowed, just as defendants’ expert testimony supported the proposition that her failure for ten days (April 7 through April 16) to take her medications was a proximate cause,[1] it surely would have supported the same conclusion for a greater period — the previous year. *584 Accordingly, the trial court clearly erred in precluding evidence made admissible by MCL 600.6304 and this *585 prevented defendants from receiving a fair trial.[2] MCR 2.611(A)(1)(a). New trials limited only to damage issues are disfavored. See Burns v Detroit, 468 Mich 881; 658 *586 NW2d 468 (2003); Garrigan v LaSalle Coca-Cola Bottling Co, 373 Mich 485, 489; 129 NW2d 897 (1964).
More importantly, the jury must make a determination of liability (including comparative fault), taking into account the improperly excluded evidence; thus, a new trial limited to damages only would not be appropriate. Whether defendants contested the jury’s finding that the standard of care was breached is irrelevant. In order to establish a prima facie case, plaintiff must prove: (1) a breach of the standard of medical care; (2) *587 injury; (3) proximate cause — a definitive legally recognized linkage between the breach and the injury; and (4) damages. Cox v Flint Bd of Hosp Managers, 467 Mich 1, 10; 651 NW2d 356 (2002). Simply proving that there was a breach of the standard of care, without more, does not prove liability. A breach of the standard of care is only relevant if the trier of fact determines that that breach is a proximate cause of the plaintiffs injury. It is entirely possible for a defendant to admit negligence and still argue there is no liability because the negligence was not the proximate cause of the injury. Here, defendants were precluded from offering evidence that any breach of the standard of care was not the proximate cause of the decedent’s injury, given her pretreatment negligence. Had the evidence been presented, the jury could reasonably have concluded that even if defendants had breached the standard of care, they still were not liable because any breach was not a proximate cause of the decedent’s injuries. Therefore, a new trial on all issues, including liability, is necessary. Limiting the new trial to damages only ignores the important fact that proximate cause is essential to a plaintiffs prima facie case, and improperly conflates two separate and necessary elements of liability: of a breach of a standard of care and a showing that that breach was a proximate cause of the injury.[3]
*588 In fact, under our statutory scheme, the issues of liability and damages, as they relate to comparative negligence, are inextricably linked. MCL 600.2959 provides:
In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306. If that person’s percentage of fault is greater than the aggregate fault of the other person or persons, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306, and noneconomic damages shall not be awarded. [Emphasis added.]
In addition, M Civ JI 11.01, the standard jury instruction regarding comparative negligence, provides:
The total amount of damages that the plaintiff would otherwise be entitled to recover shall be reduced by the percentage of plaintiffs negligence that contributed as a proximate cause to [his / her] [injury /property damage].
This is known as comparative negligence.
*589 (The plaintiff, however, is not entitled to noneconomic damages if [he / she] is more than 50 percent at fault for [his / her] injury.)
In other words, the standard jury instruction simply reduces MCL 600.2959 to its mathematical equivalent: in order for the plaintiff or the decedent’s fault to be more than the aggregate sum of the fault of all other applicable persons, the jury must place the plaintiffs fault at more than fifty percent.
Thus, both MCL 600.2959 and M Civ JI 11.01 assume that the jury has properly heard all evidence regarding liability and reached a determination of fault before damages can be assessed. If, during the trial, the jury was improperly precluded from considering evidence regarding the decedent’s comparative negligence, it follows that the jury’s determination of liability is flawed. If this determination of liability is flawed, it is impossible to ascertain the correct amount of damages. Therefore, I do not believe that it is possible to separate the issues of liability and damages, and believe a new trial on all issues is required. I would reverse the judgment of the Court of Appeals and remand this case for a new trial.
B. THE LOWER DAMAGES CAP APPLIES
For the reasons stated in Jenkins v Patel, 471 Mich 158; 684 NW2d 346 (2004), I agree with the majority that the noneconomic damages cap found in MCL 600.1483 applies to wrongful death actions alleging medical malpractice. I cannot agree, however, that the higher tier of the damages cap applies to such cases. Instead, I would hold that the lower tier applies to wrongful death actions alleging medical malpractice.
MCL 600.1483(1) provides:
*590 In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to section 6304, in which case damages for noneconomic loss shall not exceed $500,000.00:
(a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:
(i) Injury to the brain.
(ii) Injury to the spinal cord.
(b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.
(c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate. [Emphasis added.][4]
*591 As an initial matter, MCL 600.1483(1) requires the trial court to determine whether one of the statutory exceptions, and thereby the higher cap, applies. Here, however, the jury was improperly instructed to return a special verdict that required answers to the following questions: “Did [the decedent] suffer hemiplegia, paraplegia, or quadriplegia resulting in a total or permanent functional loss of one or more limbs caused by injury to the brain?” and “Did [the decedent] suffer permanently impaired cognitive capacity rendering her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living?” The jury answered “yes” to both questions, and the trial court determined that the higher, $500,000 cap was therefore applicable.
These questions should not have been submitted to the jury because the applicability of § 1483 is a question for the court. I would, therefore, take this opportunity to clarify that the question of the application of § 1483 is solely an issue for the trial court, not the jury.
Further, I believe that the lower tier damages cap of § 1483 applies in wrongful death actions alleging malpractice. In any wrongful death action, the plaintiff is seeking to recover for the decedent’s death, and death is not one of the statutory exceptions giving rise to the application of the higher cap. This Court does not have the authority to create an exception the Legislature has *592 not included in the statute. Had the Legislature wished to include negligence causing death as an exception, it could have done so.
In fact, it did do so in the previous version of the statute, but this death exception was eliminated when the statute was amended in 1993 to its current form. 1993 PA 78, effective October 1,1993. The history of the current version of § 1483 indicates that the Legislature intended to exclude death from the exceptions giving rise to the application of the higher cap. Although death was one of the exceptions enumerated in the prior version of the statute, it is conspicuously absent from the present version of the statute. The Legislature apparently made a policy decision that the survivors of dead medical malpractice victims are entitled to lesser damages than are living medical malpractice victims who are suffering from one of the three types of permanent conditions enumerated in the statute. This choice makes sense because it is not the surviving, permanently, and severely injured patient who is recovering damages in a wrongful death action, but the patient’s relatives or other survivors who have not suffered from these permanent conditions. Further, in enacting this aspect of tort reform legislation, the Legislature could well have chosen a policy that would help to limit the cost of malpractice insurance. Whether one agrees with such policy decisions, those decisions are solely within the Legislature’s authority to make. This Court may not question the wisdom of the Legislature’s policy choices; rather, this Court must enforce the statutory language as written.
Finally, the structure of § 1483(1) indicates that the Legislature intended that an exception, if it is applicable, apply at the time that the trial court makes its postverdict determination concerning whether the cap *593 requires adjustment of the verdict. First, § 1483(1) imposes the $280,000 cap unless “1 or more of the ... exceptions apply as determined by the court pursuant to section 6304....” (Emphasis added.) Section 6304(5), in turn, directs the trial court to “reduce an award of damages” as required by the limitations set forth in § 1483(1). This language supports the conclusion that the exception must be applicable at the time the verdict is adjusted by the trial court. Second, the language of subsections 1(a) and (b) of the cap statute, § 1483, is in the present tense (“[t]he plaintiff is hemiplegic”; “[t]he plaintiff has permanently impaired cognitive capacity”), clearly requiring that the enumerated conditions currently exist. Here, at the time of the postverdict decision regarding the amount recoverable, the decedent would not have been described as someone who was paraplegic or someone who had a permanently impaired cognitive capacity; rather, the decedent would have only been described as deceased.
For the same reasons stated in Jenkins, supra at 171-173, applying the lower damages cap does not frustrate the purpose of MCL 600.2922(6), which provides that the court or jury in a wrongful death action “may award . . . reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death....” (Emphasis added.) As we noted in Jenkins, applying the lower damages cap to limit the amount of actual recovery by the plaintiff does not in any way limit the amount of the jury’s award. The jury or court may still award whatever amount it concludes is reasonable under MCL 600.2922(6); that amount, however, is subject to reduction under MCL 600.1483.
Therefore, because MCL 600.1483 does not include death as one of the enumerated exceptions to the lower *594 damages cap, and because the statutory syntax suggests that the plaintiff must currently fall into one of the enumerated exceptions at the time of the postverdict recovery determination, I believe that the lower tier damages cap applies in wrongful death actions alleging medical malpractice.
C. MCL 600.6311 DOES NOT APPLY TO WRONGFUL DEATH ACTIONS
MCL 600.6306 provides, in relevant part:
(1) After a verdict rendered by a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court. Subject to section 2959, the order of judgment shall be entered against each defendant, including a third-party defendant, in the following order and in the following judgment amounts:
(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible under section 6303(5) reduced to gross present cash value.
(d) All future medical and other health care costs reduced to gross present cash value.
(e) All future noneconomic damages reduced to gross present cash value.
(2) As used in this section, “gross present cash value” means the total amount of future damages reduced to present value at a rate of 5% per year for each year in which those damages accrue, as found by the trier of fact as provided in section 6305(1)(b).
*595 MCL 600.6311, however, provides an exception to the requirement in MCL 600.6306 of a reduction to present value:
Sections 6306(l)(c), (d), and (e), 6307, and 6309 do not apply to a plaintiff who is 60 years of age or older at the time of judgment.
Here, the trial court ruled that in wrongful death cases, the “plaintiff” referred to in § 6311 was the decedent. Because the decedent was over age sixty at the time of judgment, the trial court held that § 6311 applied. The Court of Appeals declined to determine whether § 6311 applied to the decedent or to the personal representative because both the decedent and the personal representative were over age sixty; therefore, the Court held that § 6311 applied in any event.
I believe that the exception does not apply in the case of a decedent: it applies only to a plaintiff who “is 60 years of age or older at the time of judgment.” At the time of judgment in a wrongful death action, the decedent is dead. Moreover, the decedent is not generally recognized as the ■ “plaintiff” in a wrongful death action.
At common law, a cause of action did not survive death. As we noted in Hawkins v Regional Med Laboratories, PC, 415 Mich 420, 428-429; 329 NW2d 729 (1982), “under common law, [causes of action] were terminated by the death either of the person injured or the tortfeasor. 1846 Rev Stats, ch 101, § 5.” The Legislature subsequently changed the common-law rule through the wrongful death provisions, allowing causes of actions to survive death through the creation of a “new” plaintiff, the estate. The estate is then represented by the personal representative: MCL 600.2922(2) provides that “[e]very action under this section [the wrongful death provision] shall be brought *596 by, and in the name of, the personal representative of the estate of the deceased person” (Emphasis added.) Indeed, the named plaintiff in the instant case is “Estate of Betty Jean Shinholster,” “by” the personal representative.
Section 2922(2) does not compel the conclusion that the “plaintiff” in a wrongful death action is the personal representative. Rather, § 2922(2) simply requires that the action be brought “by” and “in the name of” that representative. The true plaintiff remains the decedent’s estate. Those who are entitled to share in the proceeds of a judgment obtained in the wrongful death action are enumerated in MCL 600.2922(3), and include relatives, a spouse’s children, and devisees and beneficiaries. These persons can be relevant only because they all may be entitled to a portion of the decedent’s estate. Unlike a living person, an estate does not have an “age”; therefore, § 6311 cannot apply to an estate. Because § 6311 does not apply to estates, it cannot be applied in wrongful death actions.
II. CONCLUSION
I agree with the majority that the clear and unambiguous language of MCL 600.6304(1) and MCL 600.2959 requires that a jury is permitted in all medical malpractice actions to consider a plaintiffs pretreatment negligence as comparative negligence to offset a defendant’s fault, provided evidence has been admitted that would allow a reasonable person to conclude such negligence was “a proximate cause” of the plaintiffs injury. I do not agree, however, that a new trial should be limited to damages only; rather, I would reverse and remand for a new trial on all issues.
Further, although I agree that the noneconomic damages cap of MCL 600.1483 applies to wrongful death actions alleging medical malpractice, I do not *597 agree that the higher tier applies in such cases. Instead, I would hold that the lower cap of MCL 600.1483(1) applies.
Finally, I would hold that MCL 600.6311, which provides that the reduction to present value does not apply to “a plaintiff who is 60 years of age or older at the time of judgment,” cannot apply in wrongful death cases, because in such cases the true “plaintiff” is the estate, which is not a person and does not have an “age.”
Therefore, I would reverse the decision of the Court of Appeals and remand for a new trial.
Taylor and Young, JJ., concurred with Corrigan, C.J.

 One of defendants’ experts, Dr. Bradford Walters, testified as follows:
*584 Q. Does Mrs. Shinholster have a duty to take her medication as prescribed?
A. She does.
Q. I want you to assume for this next question that as of April 7, 1995 and continuing through April 16th, 1995 when Mrs. Shinholster went into the hospital, I want you to assume that she did not take her Procardia as prescribed.
A. So assumed.
Q. I want you to assume she maintained her normal habit and routine regarding that, and she only took it when she didn’t feel well[.]
A: I will assume that.
Q. Assuming that to be true, do you have an opinion based upon a reasonable degree of medical certainty that Mrs. Shinholster’s failure to take the Procardia as prescribed from April 7 through April 16, 1995 was a proximate cause of her stroke and ultimate death?
A. I think it was one of the reasons, yes. It was a proximate cause.
Q. Why would her failure to take her medication as prescribed be a proximate cause of her stroke and death?
A. One of the worst things that can happen to a patient who has high blood pressure is to take their medication intermittently. The blood pressure comes down. The medication wears off. The blood pressure soars up. The blood pressure comes down. If and when they take it again, it’s sort [of] like a hammer hit to the brain each time that happens.
When blood pressure medications are taken on a regular basis there’s a much smoother lowering of blood pressure and you don’t get those spikes up and down and up and down.
*585 Those spikefs] up and down can possibly cause what happened to Mrs. Shinholster and a stroke like this. . . .
Q. So one of the things you have [a] problem with Betty Shinholster is she must not have been taking her meds as prescribed. Is that what you believe?
A. That’s what I believe.
Q. Do you believe that caused her death?
A. I believe it was one of several factors. Whether I can say it is the cause, the ultimate cause, would he nice for black and white purposes. But nothing is quite that black and white. But I think it was one part of a jig saw puzzle, and that was definitely one piece.
Q. Let me ask you this, sir: If she had taken her blood pressure medication exactly as the doctor told her to do you believe she would be alive?
A. I think there was a good chance that she may have been.

 I further note that, although Justice Markman argues, ante at 556 and n 11, that defendants have not argued that a new trial on all issues is required, defendants have preserved this issue on appeal. Defendants preserved the issue at trial by objecting to the trial court’s refusal to admit evidence regarding the decedent’s pretreatment negligence. Defendants also objected to the trial court’s modified jury instruction regarding the decedent’s comparative negligence, arguing that the jury should have been able to consider all of the decedent’s conduct.
On appeal, defendants again preserved the argument regarding liability and proximate cause. Issue I of defendants’ brief argues that “defendants were denied a fair trial by the trial court’s instruction on comparative negligence, which improperly restricted the jury’s consideration and proper allocation of the decedent’s comparative fault.” Defendants argued that the trial court’s limitation of evidence regarding the decedent’s comparative negligence, and the resulting modified jury instruction, “denied [defendants’] right to have their responsibility determined in accordance with the facts and the law, and for this, they must be granted a new trial.” Finally, defendants argued that defendants *586 “presented expert testimony supporting their claim that [the decedent’s] persistent failure or refusal to comply with [] clearly communicated medical advice was a proximate cause of [the decedent’s] death. The trial court’s instruction, however, prevented the Jury from considering this negligence on [the decedent’s] part as a cause of her injury.”
On appeal to this Court, defendants also argued that a new trial was required because the trial court improperly limited evidence of comparative negligence, thus precluding the jury from considering all evidence regarding proximate cause:
The jury should have been allowed to consider whether the injury was proximately caused by the separate, independent act of the plaintiffs decedent.... If the stroke was caused by the separate and independent negligent acts of these doctors or even another tortfeasor . . . , the liability of each would be determined by the fault attributed to each....
Based on the evidence that was presented, and further evidence that could have been presented, it can only he concluded that a jury could have found that the decedent was neghgent prior to April 7, 1995 and that such negligence was a cause of the fatal stroke. The trial court’s limitation on the admission of evidence and its instructions to the jury were erroneous and inconsistent with substantial justice and not harmless error.
Thus, defendants have preserved the argument that a new trial on all issues is required because the proximate cause issue affects liability, as well as the argument that, in the alternative, their damages should be reduced.

 In fact, this view is supported by the standard jury instruction regarding the burden of proof for malpractice cases. M Civ JI 30.03 provides:
The plaintiff has the burden of proof on each of the following:
a. that the defendant was professionally negligent in one or more of the ways claimed by the plaintiff as stated in these instructions
b. that the plaintiff sustained injury and damages
*588 c. that the professional negligence or malpractice of the defendant was a proximate cause of the injury and damages to the plaintiff
Your verdict will he for the plaintiff if the defendant was negligent, and such negligence was a proximate cause of the plaintiff’s injuries, and if there were damages.
Your verdict will be for the defendant if the defendant was not professionally negligent or did not commit malpractice, or if the defendant was professionally negligent or did commit malpractice but such professional negligence or malpractice was not a proximate cause of the plaintiff’s injuries or damages, or if the plaintiff was not injured or damaged. [Emphasis added.]

 In the former version of § 1483, a one-tiered cap included “death” as an exception to the then-$225,000 cap:
(1) In an action for damages alleging medical malpractice against a person or party specified in section 5838a, damages for noneconomic loss which exceeds $225,000.00 shall not be awarded unless 1 or more of the following circumstances exist:
(a) There has been a death.
(b) There has been an intentional tort.
(c) A foreign object was wrongfully left in the body of the patient.
(d) The injury involves the reproductive system of the patient.
*591 (e) The discovery of the existence of the claim was prevented by the fraudulent conduct of a health care provider.
(f) A limb or organ of the patient was wrongfully removed.
(g) The patient has lost a vital bodily function. [1986 PA 178, effective October 1, 1986.]